PAUL W. HENKELMANN, AN INFANT, ETC., *v.* METROPOLITAN LIFE INSURANCE COMPANY
WILLIAM R. DOWNS *v.* PAUL W. HENKELMANN, AN INFANT, ETC.

[Nos. 18 and 19, April Term, 1942.]

592

*Decided May 26, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Deely K. Nice* and *M. William Adelson,* with whom were *Dickerson, Nice & Sokol* and *Max Sokol* on the brief, for the appellant in No. 18 and for the appellee in No. 19.

*G. Van Velsor Wolf,* with whom were *Jesse Slingluff, Jr.,* and *Marbury, Gosnell & Williams* on the brief, for the appellee in No. 18.

*Daniel S. Sullivan, Jr.,* with whom was *Fred J. Van Slyke* on the brief, for the appellee in No. 19.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought in the Baltimore City Court by Paul W. Henkelmann, infant, against the Metropolitan Life Insurance Company and William R. Downs, its

agent, to recover damages for injuries received when he was struck by an automobile driven by Downs in the course of his employment.

The accident occurred in Baltimore early on the afternoon of April 12, 1939. The plaintiff, eight years old at the time of the accident, was struck while on the way to school as he was crossing Franklintown Road at or near the intersection of Boyd Street. Near the corner a bakery truck was parked on the east side of the road, while opposite was an automobile. The boy swore that the truck was parked about six feet south of Boyd Street, and that on stepping from the south pavement of Boyd Street he walked in front of the truck and could not see any car coming. One of his schoolmates testified: "Mr. Downs' car swung around in front of the truck and hit Paul. He knocked Paul in the middle of Boyd Street near the manhole pipe." On the contrary, Downs swore that the truck was parked north of Boyd Street and that as he drove around it he caught a glimpse of a child coming from the right about 35 feet north of the corner, and he applied his brakes and swerved toward the middle of the road. The boy received an injury to the brain, and had a convulsion before he reached the hospital. It is provided by statute in this State that in the event of an accident resulting in injury to any person, the operator of a motor vehicle shall within twenty-four hours report the details of the accident to the Commissioner of Motor Vehicles. Code, 1939, Art. 56, Sec. 198. Downs admitted on the witness stand that he made no report of the accident to the Commissioner of Motor Vehicles.

The Metropolitan Life Insurance Company prayed for a directed verdict, but the court submitted the case to the jury against both the company and the agent. The jury rendered a verdict for the sum of $2,500 against both defendants. Subsequently the court entered a judgment *non obstante veredicto* in favor of the company.

In appealing from the judgment against him, Downs contended that there was no evidence of negligence

legally sufficient to justify submission of the case to the jury. The plaintiff and his schoolmate testified that the accident occurred at the street crossing. The Legislature has enacted that all pedestrians shall have the right of way at street crossings in the cities and towns of the State, except where traffic is controlled at such crossings by traffic officers. Code, 1939, Art. 56, Sec. 235. It is the duty of a driver at a street crossing to be exceedingly vigilant and to have his car under such control, and the speed of the car so reduced that he may be able to stop and divert its course at the slightest sign of danger in order to avoid collision with pedestrians as far as reasonably possible. If he fails to do so and an accident results, he is liable in damages for the consequences. *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Deford v. Lohmeyer*, 147 Md. 472, 128 A. 454; *Parr v. Peters*, 159 Md. 106, 150 A. 34; *Sheer v. Rathje*, 174 Md. 79, 197 A. 613; *Von Cannon v. Philadelphia Transportation Co.*, Pa. Super., 25 A. 2d 584. It is well established that before a prayer for a directed verdict can be granted, the court must assume the truth of all the evidence tending to sustain the suit and of all inferences of fact fairly deducible therefrom, even though such evidence may be contradicted in every particular by the opposing evidence in the case. *Atholwood Development Co. v. Houston,*, 179 Md. 441, 19 A. 2d 706. Accordingly in an action for injuries to a child struck by an automobile while crossing a street, contradictory testimony on the question whether he was crossing at an intersection or between intersections justifies refusal of a directed verdict. *York Ice Machinery Corp. v. Sachs*, 167 Md. 113, 173 A. 240.

It is a statutory crime in Maryland for any person to operate a motor vehicle upon any public highway of this State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway. Code, 1939, Art. 56, Sec. 196. Upon approaching a crossing of intersecting highways, a driver shall have the motor vehicle under

596

control and shall reduce its speed to a reasonable and proper rate. Code, 1939, Art. 56, Sec. 197. Even between intersections, motorists are required to keep a lookout for children who may suddenly come upon the road in front of them. If a child darts in front of an automobile when the driver is obeying the rules of the road and driving at a reasonable rate of speed, and the driver cannot by the exercise of due diligence avoid striking the child, the driver is not liable for resulting injuries. *Sorsby v. Benninghoven,* 82 Ore. 345, 161 P. 251. But if a driver is running his car at an unreasonable speed, be cannot escape liability for striking a child by saying that the child ran in front of the automobile so suddenly that the accident was then unavoidable. *Morrison v. Flowers,* 308 Ill. 189, 139 N. E. 10. The record shows that Franklintown Road is only about eighteen or twenty feet wide, and it is very dangerous to pass when motor vehicles are parked on both sides of the road. Downs admitted at the trial: "It is awfully dangerous getting through. You have just room of about a foot on each side when you go between." Yet he readily admitted that he drove the car through the narrow space between the truck and the automobile near the street intersection at the speed of between fifteen and twenty miles per hour. The evidence was ample to warrant the conclusion reached by the jury that the driver did not exercise the degree of care required of a driver in the light of the circumstances confronting him, having regard to the width, traffic and use of the highway.

It was argued that the schoolmate's testimony that Downs' car swerved around the bakery truck and struck the plaintiff is legally incredible in view of his statement that the plaintiff was standing only a foot in front of the truck. The record shows, however, that when the schoolmate was asked whether he was certain that the plaintiff was standing only about a foot in front of the truck, he replied: "Not quite sure, but the car had to swing in. As he swung in, he hit Paul." An accident of this nature happens so suddenly that it is some-

times difficult for a witness, especially a child, to testify with precision as to distance. The schoolmate maintained that the plaintiff was standing in a place of safety. Downs admitted that he swerved around the truck and that the plaintiff had not walked into the street more than three feet. We do not believe the theory of incredibility can be invoked in this case.

The further contention that the plaintiff was guilty of contributory negligence as a matter of law also can not be sustained. To justify withdrawal of a case from the jury on the ground of contributory negligence, the evidence must show some act decisively negligent as to leave no room for difference of opinion thereon by reasonable minds. A child of tender years is not held to the same measure and kind of care required of a reasonably prudent adult, but only to that degree of care which children of the same age and intelligence would be expected to exercise under similar circumstances. *Bozman v. State, to use of Cronhardt,* 177 Md. 151, 9 A. 2d 60. For example, in a case where a boy eleven years old, before starting to cross a street, looked in the direction from which the defendant's automobile was approaching but did not see it, probably because the view was obstructed by a telephone pole, the court held that it was not contributory negligence as a matter of law to fail to look again after passing the pole. *Wickman v. Lundy,* 120 Wash. 69, 206 P. 842. In the court below a witness, who swore that he had been standing for about one hour on the corner of Franklintown Road and Hollins Street while waiting for a man to make some bets for him at a bookmaking establishment, swore that he saw from that distance a boy push the plaintiff into Downs' car. It is generally held that when evidence is conflicting, so that the credibility of the witness is of paramount importance, the issue of contributory negligence of a pedestrian at a street crossing is a question for the jury. *American Express Co. v. State, to use of Denowitch,* 132 Md. 72, 103 A. 96; *Riley v. State,* 140 Md. 137, 117 A. 237; *Brown v. Pat-*

terson, 141 Md. 293, 118 A. 653; *Kellner v. Christiansen,* 169 Wis. 390, 172 N. W. 796; *New York Transportation Co. v. Garside,* 167 F. 521, 526.

It was contended on the appeal from the judgment *non obstante veredicto* that the Metropolitan Life Insurance Company was liable under the doctrine of *respondeat superior.* This doctrine was founded on the principle that "every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it." *Farwell v. Boston & Worcester R. R. Corp.,* 4 Metc., Mass., 49, 55, 38 *Am. Dec.* 339, 340. The courts, however, have regarded the doctrine with jealousy and have confined it within limits as narrow as are consistent with the true interests of society. *Wood, Master and Servant,* 2d Ed., Sec. 277. In 1840 the courts in England began to relax the doctrine by holding that it does not apply to independent contractors. In 1869 the Court of Appeals of Maryland, in an opinion by Judge Alvey, observed that the doctrine had been modified by the English decisions, and held that it is not applicable where the employee is "a contractor, pursuing an independent employment, and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done." *Deford v. State, to use of Keyser,* 30 Md. 179, 203. In 1884 the Court of Appeal said that the theory upon which liability under the doctrine is predicated is that the master is constructively present, so that the negligence of the servant is the negligence of the master. *Adams v. Cost,* 62 Md. 264, 267, 50 *Am. Rep.* 211. In 1901 this court stated that an essential element of the relation of master and servant is that the master shall have control of the employment and all of its details. *Baltimore Boot & Shoe Mfg. Co. v. Jamar,* 93 Md. 404,

413, 49 A. 847, 850, 86 *Am. St. Rep.* 428. Finally in 1932 we definitely decided that the test in determining whether a person is a servant or an independent contractor is whether the employer has the right of control over the employee in respect to the work to be performed. *State, to use of Boznango v. Blumenthal-Kahn Electric Co.,* 162 Md. 84, 92, 159 A. 106. Thus, it was held by this court that a salesman who sold goods on commission, operated his own car at his own expense and received no directions as to his work or route, was an independent contractor, so that his employer was not liable for injuries caused by him in the operation of his car. *Washington News Co. v. Satti,* 169 Md. 489, 182 A. 286.

In recent years, on account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice. It has been suggested that the test in determining whether a salesman is a servant of an independent contractor is difficult to apply in many instances, nevertheless it has been adopted almost universally by the courts of this country. It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and that had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably in inferred. *Khoury v. Edison Electric Illuminating Co.,* 265 Mass. 236, 164 N. E. 77, 60 *A. L. R.* 1159; *Aldrich v. Tyler Grocery Co.,* 206 Ala. 138, 89 So. 289, 17 *A. L. R.* 617; *Dohner v. Winfield Wholesale Grocery Co.,* 116 Kan. 237, 226 P. 767; *Gall v. Detroit Journal Co.,* 191 Mich. 405, 158 N. W. 36, 19 *A. L. R.* 1164; *Harrington v. H. D. Lee Mercantile Co.,* 97 Mont. 40,

33 P. 2d 553; *James v. Tobin-Sutton Co.*, 182 Wis. 36, 195 N. W. 848, 29 *A. L. R.* 457; *Kassela v. Hoseth*, 217 Wis. 115, 258 N. W. 340; *Stockwell v. Morris*, 46 Wyo. 1, 22 P. 189; 5 *Am. Jur., Automobiles*, Sec. 393; 5 *Blashfield, Cyclopedia of Automobile Law and Practice*, Sec. 3079.

Downs was employed to sell industrial insurance and collect premiums on his debit, his assigned territory, and was authorized to sell ordinary insurance anywhere in the State of Maryland. He received a salary and commissions. The determination of the issue is facilitated by the fact that he was an agent, and not a servant. The distinction between an agent and a servant is that an agent is employed to represent his principal in reference to some contractual obligation with a third person, whereas a servant is employed to render service to, rather than for, the master. In measuring the extent of an agent's authority, emphasis is ordinarily placed upon the terms of the contract; in the case of a servant, the emphasis is ordinarily placed upon the nature of the employment. The court has already recognized that this distinction may be important in determining the liability of an employer for a tortious act of his employee. *Great Atlantic and Pacific Tea Co. v. Noppenberger*, 171 Md. 378, 389, 189 A. 434, 439. The American Law Institute stated the distinction as follows: "It is important to distiguish between a servant and an agent who is not a servant, since ordinarily a principal is not liable for the incidental acts of negligence in the performance of duties committed by an agent who is not a servant. * * * The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results. Those rendering service but retaining control over the manner of doing it are not servants. * * * * An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the princi-

pal as to such conduct as one who agrees only to accomplish mere physical results." 1 *Restatement of Agency,* Sec. 220. Thus, it is stated as a general rule that a principal is not liable for any physical injury caused by the negligent conduct of his agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner authorized or directed by the principal, or the result was one authorized or intended by the principal. In other words, a principal employing an agent to accomplish a result, but not having the right to control the details of his movements, is not responsible for incidental negligence while such agent is conducting the authorized transaction. 1 *Restatement of Agency,* Sec. 250.

Of course, even an agent may be subject to the control of his principal in respect to some portion of the work to be performed, and under such circumstances the doctrine of *respondeat superior* can be invoked. But it has been distinctly held that the doctrine applies in such a case only when the relationship of master and servant existed in respect to the very thing from which the injury arose. *Leachman v. Belknap Hardware & Mfg. Co.,* 260 Ky. 123, 84 S. W. 2d 46. We accept the principle adopted by the great weight of authority that an insurance company is not liable for an agent's negligent operation of an automobile, where the company has no control over the method and means adopted by the agent in the performance of the work, but is interested only in the results accomplished. *Hutchins v. John Hancock Mutual Life Insurance Co.,* 89 N. H. 79, 192 A. 498; *Wesolowski v. John Hancock Mutual Life Insurance Co.,* 308 Pa. 117, 162 A. 166, 87 *A. L. R.* 783; *American Savings Life Insurance Co. v. Riplinger,* 249 Ky. 8, 60 S. W. 2d 115; *Income Life Insurance Co. v. Mitchell,* 168 Tenn. 471, 79 S. W. 2d 572; *Kennedy v. American National Insurance Co.,* 130 Tex. 155, 107 S. W. 2d 364, 112 *A. L. R.* 916; *American National Insurance Co. v. Denke,* 128 Tex. 229, 95 S. W. 2d 370,

107 *A. L. R.* 409; *Riggs v. Higgins,* 341 Mo. 1, 106 S. W. 2d 1; *Neece v. Lee,* 129 Neb. 561, 262 N. W. 1.

At the time of the accident Downs was driving a Chevrolet sedan owned by his wife. It is unquestioned that the fact that an automobile which occasioned injuries while being driven by a servant did not belong to the master does not preclude the injured person from recovering damages from the master if its use was authorized by the master and was within the scope of the employment. *Goldsmith v. Chesebrough,* 138 Md. 1, 113 A. 285; *Regal Laundry Co. v. A. S. Abell Co.,* 163 Md. 525, 163 A. 845. But when an employee uses an automobile for his personal convenience in going from one place of work to another, but is under no duty to use it for the business, and the expense of operation of the car is not borne by the employer, and the employer has no right of control over the employee in its operation, the employee is an independent contractor when driving the car. *Reardon v. Coleman Bros.,* 277 Mass. 319, 178 N. E. 638. Downs received no compensation from the company for maintenance of an automobile or for other transportation. He was required to report at the office every morning; but when he drove to the debit, he did not use the car after he arrived there, as the debit was only two blocks long and four blocks wide, and he visited about 479 families, making between 700 and 800 collections. He had no schedule of working hours. He was authorized to do his work as he pleased, covering the territory as though it were his own business. There were no instructions requiring Downs, either expressly of by implication, to operate an automobile in the performance of his duties. Whether he drove his wife's car, or hired a taxicab, or walked was of no concern to the insurance company. The company was concerned only in the results accomplished.

It follows that, since the company did not exercise any control over its agent respecting the means of transportation, and the agent was an independent contractor in respect to the operation of the automobile, the doctrine

of respondeat superior cannot be applied in this case. The trial court was therefore right in entering judgment *non obstante veredicto* in favor of the company.

*Judgment non obstante veredicto in No. 18 affirmed, with costs.*

*Judgment in No. 19 affirmed, with costs.*

BOND, C. J., delivered the following dissenting opinion in No. 18:

In my view Downs was merely a servant of the corporation; however, he may have been called an agent.

There being no agreement or direction from the employer restricting the means to be used by him in his work, any usual or suitable means was authorized, and its use was within the scope of Downs' employment. In that situation his use of an automobile was analogous to a use of his own legs.

The American Law Institute Restatement, Agency, Sec. 239, gives the rule in a comment: "If the master directs a servant to accomplish the result and does not specify the means to be used, the servant is authorized to employ any usual or suitable means." And an illustration given is: "P employs A a messenger boy, giving no instructions as to means of locomotion. A's use of his own bicycle in delivering messages is within the scope of employment."

These considerations lead me to vote for a reversal in the first appeal.