**STATE OF MARYLAND, to the Use of Emma BENNUS, or in the alternative, Emma Bennus, Administratrix of the Estate of Phyllis White, Deceased**

v.

**UNITED STATES of America.**

Civ. A. No. 29879.

United States District Court
E. D. Pennsylvania.

Aug. 15, 1963.

Norman Shigon, Philadelphia, Pa., for plaintiff.

Joseph R. Ritchie, Jr., Asst. U. S. Atty., for defendant.

VAN DUSEN, District Judge.

This action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346, was brought by the administratrix of the estate of Phyllis White,[1] whose death resulted from injuries received in an automobile accident which occurred on November 22, 1959, while she was a passenger in the car of one James Barnette, then a Lieutenant in the United States Army stationed at Aberdeen Proving Grounds, Aberdeen, Md. The Complaint alleges that at the time of the accident, the officer was returning the decedent to her college dormitory after an officially sponsored dance or mixer at the officers' club of the Aberdeen Proving Grounds, that in so doing he was acting in the scope of his employment for the United States Government, and that, therefore, defendant is liable. Defendant denies liability and also denies that the couple was returning from an official Army function and that Lieutenant Barnette was acting within the scope of his employment at the time of the accident. It has moved for summary judgment on the ground that the Federal Tort Claims Act is not applicable and its Renewed Motion for Summary Judgment (Document 33) is now before the court.[2]

1. The caption is in the alternative, being titled "State of Maryland, to the use of Emma Bennus, Plaintiff, or in the alternative, Emma Bennus, Administratrix of the Estate of Phyllis White, Deceased, Plaintiff, v. United States of America, Defendant." Where the word "Plaintiff" is used in this Memorandum Opinion, it refers to Emma Bennus, Administratrix and surviving parent of decedent. The action has been brought under the authority of the Federal Tort Claims Act and states that the "First Cause of Action" is brought under the Maryland wrongful death statute and the "Sec-

ond Cause of Action" under the Maryland survival statute. Maryland was the place where the accident occurred and where the decedent died.

2. A Motion for Summary Judgment was first filed by defendant on October 26, 1962. Several affidavits accompanied this Motion (see Document 13). Plaintiff filed an answer to said Motion and also filed affidavits (see Document 15). Both parties then filed motions to strike affidavits (see Documents 16 & 20) and the defendant filed a motion for leave to supplement with additional affidavits and depositions

Under the decisions of the United States Court of Appeals for the Third Circuit prior to the effective date of the recent amendments to F.R.Civ.P. 56, the instant Motion might have been denied on the ground that a genuine issue as to a material fact existed in this case because of the apparent disparity between the statements in the Complaint and in the affidavits and depositions submitted by defendant. However, the amendment to F.R.Civ.P. 56(e) provides that when a motion for summary judgment is made and is appropriately supported, an adverse party may not rest on mere allegations or denials in his pleadings, but his response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue of fact for determination at the trial. If he does not so respond, summary judgment, if appropriate, may be entered against him. See F.R.Civ.P. 56(e), as amended.

In this case, the affidavits and depositions submitted by defendant present to the court a factual situation completely different from that set forth in the Complaint. These affidavits and depositions have not been appropriately controverted by plaintiff in any material respect.[3] The uncontroverted facts shown by the record are as follows:

"The social affair which was attended by the deceased, Lieutenant Barnette, and others on the evening of November 21, 1959, was a private party given by a group of army officers in their residence located off the army base. The deceased and certain other students from the College of Notre Dame were transported to said party in two private automobiles driven by army officers in civilian attire who were also going to attend the party. James Barnette was one of those who transported the group of girls to the party. Phyllis White did not drive to the party in his car. Lieutenant Barnette did not perform any duty assignment on November 21–22, 1959, and does not even know if he was on the base during that period.

its Motion for Summary Judgment (Document 17). After a hearing on the Motion for Summary Judgment, the court granted both parties leave to supplement their affidavits (see Documents 17 & 21), dismissed defendant's motion to strike plaintiff's affidavits as moot (Document 21) and granted defendant leave to file a renewal of its Motion for Summary Judgment on April 23, 1963, which renewed motion was to be based on the record as it existed on that date. After filing supplemental affidavits and the depositions of two persons whose affidavits had been submitted by plaintiff (see Documents 22, 25–28), defendant filed a Renewed Motion for Summary Judgment (see Document 29). Argument was again had, at which time counsel for the parties agreed that, as the amendments to the Federal Rules of Civil Procedure were not effective at the date the Renewed Motion was filed, the Government would be permitted to file a Second Renewed Motion as soon as the amendments became effective. Counsel also agreed that no further argument would be necessary.

3. The affidavits submitted by plaintiff (see Document 15) are not helpful to her. The affidavits of Sr. Angela Marie and Marylee Frantz McShane were explained by said affiants in their depositions (see Documents 25 & 28), which were taken subsequent to the filing of the affidavits. Said depositions show that the position of the two is the same as that of the affiants whose affidavits were submitted by defendant and that they do not contradict the statements of defendant's affiants in any material respect, but, rather, support them. The other affidavit submitted by plaintiff, that of the administratrix, is not helpful because the material portions thereof are statements not made on personal knowledge. It is also noted that the position of counsel for plaintiff at the last argument was not that defendant's factual statements were incorrect but that defendant was not entitled to judgment as a matter of law on the facts as stated by defendant. In the Supplemental Brief submitted by plaintiff subsequent to the last argument, there is no contention that the facts presented by defendant are incorrect (see Document 36). See, also, plaintiff's brief contra defendant's Renewed Motion for Summary Judgment (Document 35), in which the position that the party took place at the officers' club is abandoned.

The girls who arranged that a group of Notre Dame college girls would attend the affair did not believe that it was an official function and the invitation was not extended through the school's social chairman. It was not understood by the President of the college to be an official dance sponsored by the Government. At about 11:30 P.M. on November 21, 1959, James Barnette started back to the College of Notre Dame with Phyllis White, who was due back at the school at 1:00 A.M., as his only passenger. En route, the accident causing the death of Miss White occured."[4]

Under 28 U.S.C.A. § 1346, the United States is liable for negligence of an employee who is acting within the scope of his employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.[5] "Acting within the scope of his office or employment" in the case of a member of the military or naval forces means acting in the line of duty. See 28 U.S.C.A. § 2671. It is plaintiff's position that the phrase "line of duty" has a broader significance than "scope of employment" and that the standard to be applied should be taken from military cases in which the serviceman is a claimant for injuries received (see Document 35). Plaintiff also contends that this court should use its own standards in determining if the doctrine of *respondeat superior* applies (see Document 36). This position is contrary to established law.

The policy of the Federal Tort Claims Act is to fix Government liability under the doctrine of *respondeat superior* just as if the United States were a private employer. E. g., United States v. Holcombe, 277 F.2d 143, 146 (4th Cir., 1960); King v. United States, 178 F.2d 320, 321 (5th Cir., 1949). It is well settled that the phrase "line of duty" in the Act, as applicable to military and naval personnel, has no broader significance than "scope of his employment," as used in master and servant cases. Cannon v. United States, 243 F.2d 71, 73 (5th Cir., 1957); Hubsch v. United States, 174 F.2d 7, 8, 9 (5th Cir., 1949); United States v. Eleazer, 177 F.2d 914, 918 (4th Cir., 1949), cert. den. 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950); Paly v. United States, 125 F.Supp. 798, 805 (D.Md. 1954), aff'd. 221 F.2d 958 (4th Cir., 1955). See Cooner v. United States, 276 F.2d 220, 222 (fn. 1) (4th Cir., 1960). The position taken by plaintiff that the Act should be construed so as to give the phrase "line of duty" the same construction as it is given in opinions of the Attorney General and Judge Advocate General in connection with claims of military personnel against the Government and thus make the United States liable for practically everything a soldier or sailor does is not a novel one. It has been attempted in other cases and found lacking in merit. E. g., United States v. Campbell, 172 F.2d 500, 503 (5th Cir. 1949), cert. den. 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757 (1949).[6]

Contrary to the position taken by plaintiff, this court may not apply its own standards to the question of appar-

---

4. These facts are as stated in the affidavits submitted by the Government (see exhibits to Document 13 and Documents 22, 25 & 27), as well as in the depositions of Marylee Frantz McShane and Sr. Angela Marie (Documents 25 & 28), whose affidavits had been submitted previously by plaintiff (see Document 15).

5. See, also 28 U.S.C.A. § 2674, which states that the United States shall be liable in relation to tort claims in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

6. At page 503 of the decision of the United States Court of Appeals for the Fifth Circuit, Judge Hutcheson stated:
"The attempt then to wrench the phrase set out in quotations in 941(c) [now 28 U.S.C.A. § 2671], 'acting within the scope of his office or employment,' out of its context in 931(a) [now 28 U.S.C.A. § 1346] and thus to give it a new and entirely different meaning, the greatly expanded one attributed to 'in line of

ent authority or agency relationship, but is bound by the *respondeat superior* doctrine of Maryland, the state in which the accident occurred. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). If there would be no liability under Maryland law if the Government were a private person, there can be no recovery in this case brought under the Federal Tort Claims Act. Under Maryland law, a principal is not liable for physical injury caused by negligent conduct of an agent who is not a servant during performance of the principal's business unless the act was done in the manner authorized or directed by the principal or the result was one authorized or directed by the principal.[7] To be within the scope of employment, conduct must be of the same general nature as that authorized or incidental to the conduct authorized. In Maryland, "[a]ll of these particular applications of the doctrine of respondeat superior arise from the principle that the liability of the master for the tortious acts of the servant rests at last upon the existence of authority, that the act must have been done in the course of an employment which the master has authorized, and that, unless such authority can be shown, there is no liability."[8] The essential premise of the Maryland doctrine is that liability depends upon authority, express or implied,[9] and the burden here is on the plaintiff to prove that the driver of the vehicle had authority, express or implied.[10] The record in this case shows that plaintiff cannot meet this burden. Lieutenant Barnette was returning from a private party, which had taken place at an off-base residence, on the night of November 21–22, 1959, and was driving his private vehicle when the accident occurred. He was not on duty at the Aberdeen Proving Grounds that evening, having gotten someone to take his place on duty.[11] Lieutenant Barnette during this period had never been appointed by the appropriate authority to drive any young ladies home from any army function which had been held at the camp.[12] Driving, especially the driving involved here, was not in the scope of his employment.

The facts as presented on this record are legally insufficient to permit an inference of implied authority. This being

---

duty,' when members of the armed forces themselves are claimants, is nothing more than an attempt to put the cart before the horse, to have the tail wag the dog. Such a construction would be to give to the phrase, 'within the scope of his office or employment' not one consistent meaning throughout the act, but two inconsistent meanings, one of these applying to acts of all government employees except members of the armed forces, would subject the United States to liability to third persons for acts of its employees only as and to the same extent that a person in private employment would be liable under the law of the state where the accident occurred. The other, applying to acts of military personnel would subject the Government to fantastic claims of liability having no relation to the doctrine of respondeat superior, as it is known and applied, in determining the liability of private persons. It would do this, too, in the face of the known purpose of the Tort Claims Act, as shown by its antecedent history, and the record made in its passage, to make the United States liable to third persons for the acts of its employees under the same circumstances, and no other, as those under which private persons would be liable for the acts of their employees according to the law of the place where the injury occurred."

7. Henkelmann v. Metropolitan Life Ins. Co., 180 Md. 591, 26 A.2d 418 (1942). See, also, cases cited in Paly v. United States, supra, 125 F.Supp. at page 806.

8. Great Atlantic & Pacific Tea Co. v. Noppenberger, 171 Md. 378, 189 A. 434, 441 (1937).

9. See case cited in footnote 8.

10. East Coast Freight Lines v. Mayor and City Council, etc., 190 Md. 256, 58 A.2d 290, 2 A.L.R.2d 386 (1948).

11. See, especially, the affidavits of Lieutenant Barnette, which are Exhibit D to Document 13 and Document 27.

12. See, especially, Exhibit B to Document 13. Note also that the officer in charge of social affairs at the Aberdeen Proving Grounds on November 21–22, 1959, examined the records of the officers' club and found no record of an officially sponsored dance or mixer having been held that evening.

the case, the Maryland doctrine of *respondeat superior* is not applicable and the action must be dismissed, since there is no liability under the Federal Tort Claims Act. See Paly v. United States, supra.

## ORDER

And Now, August 15, 1963, after consideration of the foregoing Motion, oral argument, briefs of counsel [Documents 30, 31 (with attached letter of May 14, 1963), and 34–36], and the record, it is ordered that the defendant's renewed motion for summary judgment is granted and judgment is entered for defendant and against plaintiffs.