552 A.2d 935

**Michael E. HENDERSON, et al.**

v.

**AT & T INFORMATION SYSTEMS, INC.**

**No. 649, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 2, 1989.

Leonard A. Orman, Baltimore, for appellants.

Diane Festino Schmitt (Pamela J. White, David B. Hamilton and Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellee.

Argued before MOYLAN, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

On October 17, 1986, appellant Michael E. Henderson filed a complaint against Daniel Zuckerman seeking damages for injuries arising out of a January 11, 1986 motor vehicle accident. His original complaint was amended on December 18, 1986 to assert that Zuckerman's employer, AT & T Information Systems, Inc. (AT & T), the appellee, was vicariously liable for Zuckerman's negligence. Carmen Crews, a passenger in Henderson's vehicle at the time of the accident, intervened in the action as a co-plaintiff on

June 22, 1987 and joins Henderson as an appellant in the case before this Court. Appellants seek review of the October 13, 1987 order of the Circuit Court for Baltimore City (Ward, J.) granting appellee, AT & T, summary judgment. This judgment was entered under Rule 2–602(b) as a final judgment on March 28, 1988 by the late Judge Martin B. Greenfeld so that the appellants could immediately appeal it and avoid the possible expense of a second trial.

At the hearing on the summary judgment motion, Judge Ward ruled, as a matter of law, that AT & T's employee, Zuckerman, was not acting within the scope of his employment at the time of the motor vehicle accident and, therefore, that AT & T was not vicariously liable. We perceive no error in the hearing judge's decision and shall affirm.

## FACTS

Since this is an appeal from an order granting appellee summary judgment, we shall review the evidence before the hearing judge in a light most favorable to the appellants and resolve all inferences from that evidence in their favor. Rule 2–501; *Lesch v. Chevron*, 75 Md.App. 669, 672, 542 A.2d 1292 (1988). So viewed, the record before us discloses the following undisputed material facts.

In the early afternoon of January 11, 1986, the appellants were traveling in a southbound direction on Interstate Route 95 (JFK Highway). Due to the abrupt loss of a wheel the 1979 Dodge van in which they were traveling came to a complete stop in the center southbound lane of the highway. Henderson exited the vehicle to search for the wheel, while Crews remained in the van. While Henderson was looking in the rear of the vehicle for emergency flares to display, he and the disabled van were struck from behind by an automobile which Zuckerman was driving in a southbound direction on I–95.[1] As a result of the

---

1. We express no opinion as to the negligence of Zuckerman. The Baltimore City Circuit Court action in which this issue will be adjudicated has been continued pending the resolution of this appeal.

accident Henderson sustained severe injuries including the loss of both legs.

Mr. Zuckerman was en route from New Jersey to Virginia at the time of the accident. He owned the 1976 AMC Hornet he was operating.

Zuckerman became employed by AT & T in March of 1985. Under the terms of his employment, Zuckerman was to work at appellee's Homdel, New Jersey location, as a software engineer, until the fall of 1985 when he was to participate in AT & T's Graduate Study Program, One Year on Campus (OYOC). As a participant in the OYOC program, Zuckerman would become a full time resident student at an approved graduate institution for one year. Zuckerman was given a list of AT & T approved colleges from which to choose in applying for graduate school. He evaluated a number of schools and applied for admission in the computer science master's program at Purdue University, University of Southern California, New York Polytechnic and the University of Virginia. Zuckerman ultimately decided to attend the University of Virginia. Mr. Ritacco, Zuckerman's supervisor at AT & T, approved Zuckerman's selection and agreed that Zuckerman would begin his studies in January of 1986.

AT & T, pursuant to the OYOC program, advanced 100% of all tuition and fees for Zuckerman's course of study at the University of Virginia. Zuckerman was compensated at 60% of his regular salary while attending school.[2] In the event Zuckerman did not complete his course of study he was subject to termination of employment by AT & T. If he successfully completed his course of study at the University of Virginia, Zuckerman would receive a salary increase from AT & T when he returned to work, reflecting his

---

2. Zuckerman's regular salary of $2,616.66 per month was reduced to $1,425.00 per month upon his registration at the University of Virginia. Income taxes were deducted from this salary by AT & T.

additional education.[3]

Zuckerman worked at AT & T's Homdel location through Friday, January 10, 1986. He left New Jersey to drive to Charlottesville, Virginia on Saturday, January 11, 1986. Classes began on Tuesday, January 14, 1986. Zuckerman elected to drive his own vehicle and was being reimbursed 21 cents per mile by AT & T. Zuckerman had the option of flying, or taking any mode of transportation he chose, to get to the University of Virginia. Zuckerman's household belongings were relocated at AT & T's expense.

In AT & T's OYOC Relocation Policy Manual specific rules were set out for the reimbursement of travel expenses. The maximum reimbursable mileage from Homdel to Charlottesville was estimated at 320 miles and Zuckerman was allowed one day to make the trip. AT & T would pay for three meals and one night's lodging for this trip. If Zuckerman chose to deviate from this guideline, he would not be reimbursed for any additional expenses. Zuckerman was required to fill out an en route trip expense log for submission to AT & T.

Zuckerman has no recollection of the details of the accident. He remembers stopping on I–95 at the Maryland House restaurant at approximately 12:45 that afternoon. After lunch, he continued south on I–95 where the accident occurred.

## SCOPE OF REVIEW

According to Rule 2–501(e), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In considering the matter, "the duly sworn facts which would be admissible in evidence and all

---

3. The record does not indicate that upon completion of his studies, Zuckerman was required or obligated to return to work for AT & T.

reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion." *Washington Homes v. Interstate Land Development Co.*, 281 Md. 712, 717–18, 382 A.2d 555 (1978). Mere conclusory allegations, however, neither establish facts nor generate a genuine dispute of fact. *Hebb v. Walker*, 73 Md.App. 655, 662, 536 A.2d 113 (1988). Hence upon our review, if we determine, resolving all inferences in favor of the non-moving party, that there exists a genuine dispute of fact, material to the resolution of the case, an award of summary judgment will be reversed. This is not such a case.

## ISSUE PRESENTED

■ Under the doctrine of *respondeat superior*, an employer is vicariously liable for the negligent acts of its employee if those acts are committed within the scope of employment. *Embrey v. Holly*, 293 Md. 128, 134, 442 A.2d 966 (1982); *Globe Indemnity Co. v. Victill Corp.*, 208 Md. 573, 580, 119 A.2d 423 (1956); *Kuykendall v. Top Notch Laminates, Inc.*, 70 Md.App. 244, 249, 520 A.2d 1115 (1987), *cert. denied*, 310 Md. 2, 526 A.2d 954 (1987). To be within the scope of employment the conduct of the employee must be "of a kind the actor is employed to perform, occur during a period not unreasonably disconnected from the authorized period of employment, in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." *A. & P. Co. v. Noppenberger*, 171 Md. 378, 390, 189 A. 434 (1937), *quoting* the *Restatement (Second) of Agency* § 229 (1958). In short, the test for determining if an employee is acting within the scope of employment is "whether the servant was advancing his master's interests in doing what he did at the time he did it." *Rusnack v. Giant Food, Inc.*, 26 Md.App. 250, 261–65, 337 A.2d 445 (1975), *cert. denied*, 275 Md. 755 (1975).

In *Henkelmann v. Metropolitan Life Insurance Co.*, 180 Md. 591, 599, 26 A.2d 418 (1942), the Court of Appeals

discussed *respondeat superior* liability with respect to the use of automobiles. The Court stated:

> In recent years, on account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice.... It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and, that had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred. (Citations omitted.)

*Id.* In *Henkelmann*, the employee was an insurance salesman who was involved in an automobile accident on his way, in his own vehicle, to his assigned "territory." A car was not necessary to the performance of his duties and the employer had never consented to or authorized the use of a personal vehicle either to travel to or from the assigned area or while working within it. The Court of Appeals held that the insurance company was not vicariously liable for the negligence of its salesman under these circumstances.

The general rule is that, absent special circumstances, an employer will not be vicariously liable for the negligent conduct of his employee occurring while the employee is traveling to or from work. *Dhanraj v. Potomac Elec. Power Co.*, 305 Md. 623, 628, 506 A.2d 224 (1986). Annot., 52 A.L.R.2d 287, 303 (1957). It is essentially the employee's own responsibility to get to and from work. *Restatement (Second) of Agency* § 229, comment d (1958). Appellants recognize this general rule but argue that it is not applicable to the instant case. Zuckerman, they contend, was not merely traveling to work on January 11, 1986; he was relocating at the specific direction of AT & T. Appellants argue that there was sufficient evidence of AT & T's

consent to the use of Zuckerman's personal automobile and AT & T's control of the operation of the automobile to create vicarious liability for its employee's negligent operation of said automobile. The hearing judge disagreed and held that *Dhanraj v. Potomac Electric Power Co., supra,* was dispositive.

In *Dhanraj,* a PEPCO employee, while driving his own vehicle, was involved in an automobile accident while traveling to an employer endorsed six-week training course located some distance from both his home and from his ordinary work place. The employee was given a travel allowance in order to attend these classes, but was not told what means of transportation to utilize. Further, the employee was not compensated for his travel time. His work day began when he reached the training facility and ended when he departed. The plaintiff sued PEPCO, alleging *respondeat superior* liability. The hearing judge entered summary judgment in favor of PEPCO; we affirmed,[4] as did the Court of Appeals. In upholding the summary judgment, the Court of Appeals concluded that:

> [I]f Sandy [PEPCO's employee] was negligent as alleged, PEPCO was not vicariously liable for his tortious conduct under the doctrine of *respondeat superior.* PEPCO did not expressly or impliedly consent to the use of the automobile; it had no right to control Sandy in its operation, and the use of the automobile was not of such vital importance in furthering PEPCO's business that the control over it might reasonably be inferred.

*Dhanraj v. Potomac Elec. Power Co., supra,* 305 Md. at 631, 506 A.2d 224.

Appellants attempt to distinguish *Dhanraj* from the instant case, asserting that:

1. AT & T required Zuckerman to drive his personal vehicle to the University of Virginia.

---

4. *Dhanraj v. Potomac Elec. Power Co.* 62 Md.App. 94, 488 A.2d 512 (1985).

2. AT & T consented to Zuckerman's use of his personal vehicle as the means of transportation to the University of Virginia.

3. AT & T specifically controlled the use of Zuckerman's vehicle during his trip to the University of Virginia.

4. AT & T considered and recognized Zuckerman's injuries as having been incurred on a company related business trip and paid Zuckerman full benefits and salary during the time he was recuperating.

We are not persuaded.

### 1.

Appellants contend that AT & T required Zuckerman to drive his own vehicle to graduate school. They suggest that since the OYOC Policy Manual stated that AT & T would not pay for the relocation of Zuckerman's automobile, he was required to drive it to Virginia. We do not agree. In several letters addressed to Mr. Zuckerman and in various provisions of the OYOC Policy Manual, it is clearly stated that Zuckerman was entitled to choose his manner of transportation to Virginia. He would be reimbursed for "air or surface transportation" whichever he chose. When Zuckerman visited the University of Virginia in November of 1985, for an "exploratory trip," he flew to Charlottesville at AT & T's expense.

Whereas it seems that Zuckerman reviewed the OYOC Manual and discussed his travel plans with his supervisor, Mr. Ritacco, the final decision to drive to Virginia was his. While it did not matter to AT & T if Zuckerman had the use of his car at school, it obviously benefitted Zuckerman to have his own vehicle for transportation while living away from home for a year.

### 2.

Appellants next attempt to distinguish *Dhanraj* from the instant case on the basis of consent. In *Dhanraj* the employee was given a travel allowance to use however he chose to do so. Here, since Zuckerman was given a specific

amount of money per mile, appellants argue that AT & T knew he was driving and consented to the use of his personal automobile. Appellants cite *Regal Laundry Co. v. Abell Co.,* 163 Md. 525, 163 A. 845 (1933) as dispositive of this issue.

The tort-feasor in *Regal* was a newspaper reporter who was assigned to cover a political campaign. The accident in question occurred while the reporter was en route, in his own vehicle, from a political event in Salisbury, which he covered for the newspaper, to his office in Baltimore, where he was to receive further assignments. The Court of Appeals reversed a judgment, entered upon a directed verdict in favor of the newspaper, on the ground that the employer knew the reporter was using his own automobile in carrying out assignments and agreed to reimburse him for that expense. *Regal* was distinguished, by this Court, from the facts in *Dhanraj* because the newspaper employee was "on the job" at the time of the accident. *Dhanraj,* 62 Md.App. at 100, 448 A.2d 512. It was his regular job to travel from place to place to cover newsworthy events. Such was not the situation in *Dhanraj* and is not in the instant case.

In *L.M.T. Steel Products v. Peirson,* 47 Md.App. 633, 425 A.2d 242 (1981), *cert. denied,* 290 Md. 717 (1981), an employee was driving his vehicle, during working hours, from a job site to a telephone booth to make a job related telephone call when the accident occurred. The jury's verdict against the employer was upheld. This Court agreed that the evidence was legally sufficient to show the employer's implied consent to the use of the automobile in furtherance of its interests. Later, in distinguishing *L.M.T. Steel Products v. Peirson,* we stated that "unlike the incident in the case *sub judice,* the happening in *L.M.T.* occurred while the employee was en route on a clear business purpose during working hours." *Dhanraj,* 62 Md.App. at 100, 448 A.2d 512.

Zuckerman was not "on the job" at the time of the accident. Further, he was not hired by AT & T for a

position that required any amount of driving. This was a one time journey which Zuckerman agreed to make at his convenience, on a Saturday morning. Unlike the PEPCO employee in *Dhanraj*, Zuckerman was a salaried employee. That does not mean, however, that Zuckerman was being compensated for his time traveling to Virginia. While at graduate school Zuckerman was to be paid to pursue a course of study which hopefully would benefit AT & T in the future. That was the business purpose Zuckerman was executing, not driving his car for the benefit of AT & T.

### 3.

■ Assuming *arguendo* that AT & T impliedly or expressly consented to the use by Zuckerman of his personal automobile, Henderson's argument fails the *Henkelmann* and *Dhanraj* tests on the basis of control. As stated *supra*, for an employer to be liable for its employee's negligence in an automobile accident, the employer must have had "the right to control the servant in its [the vehicle's] operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably be inferred." *Henkelmann*, 180 Md. at 599, 26 A.2d 418; *Dhanraj*, 305 Md. at 627–28, 506 A.2d 224.

Appellants argue that AT & T specifically controlled Zuckerman's use of his car by requiring him to follow the most direct route from New Jersey to Virginia. This contention is not borne out by Zuckerman's deposition testimony upon which appellants rely. When questioned about his route to Virginia, Zuckerman replied, "the mileage had been established for me and I was following a route which most people by looking at a map would follow. If you draw a line, that's roughly how you go." The fact that Zuckerman was given a specified amount for reimbursable mileage does not mean that AT & T required him to travel a certain route. Zuckerman could have taken any route he chose and would have been reimbursed the same amount by AT & T.

4.

Last, appellants contend that AT & T should be held vicariously liable since it considered Zuckerman's accident an "on the job" injury and paid him salary and benefits while he was recuperating. Here, appellants confuse questions of scope of employment for purposes of workers' compensation with those pertaining to third party negligence actions. In *Dhanraj v. Potomac Elec. Power Co.*, 305 Md. at 630–31, 506 A.2d 224, the Court of Appeals refused to resort to cases construing the Workers' Compensation Act to determine the applicability of the doctrine of *respondeat superior* to the facts in that case. Likewise in other jurisdictions it has been held that the analysis of scope of employment for workers' compensation purposes is not apposite to the analysis of scope of employment for establishing liability under *respondeat superior*. *Walters v. White*, 678 F.Supp. 1235, 1239 (E.D.Va.1988); *Beard v. Brown*, 616 P.2d 726, 736–37 (Wyo.1980); *Dinkins v. Farley*, 434 N.Y.S.2d 325, 329, 106 Misc.2d 593 (1980); *Kamp v. Curtis*, 46 Wis.2d 423, 431, 175 N.W.2d 267, 271 (1970).

In *Dinkins*, an employee of Xerox Corporation was driving a borrowed car to night school graduate courses when he was involved in an accident. The employee was attending night school pursuant to a tuition aid program provided by Xerox. The plaintiff sued the driver of the automobile (the student-employee), the vehicle owner and Xerox. In granting Xerox summary judgment, the court stated:

> If Xerox could be held liable in this case under *respondeat superior*, other circumstances come to mind which would also appear to impose liability upon it. For example, if Victor Farley [employee] carelessly handled volatile materials in a chemistry class and another student were injured or property were destroyed, Xerox could be held responsible. If Xerox is responsible for what an employee does on his way to class, why would it not be equally responsible for what an employee does in class? Or, if educational sabbaticals funded by scholarship grants under the same aid program were encouraged by Xerox, it

could be responsible for injuries caused by one of its employees during such a sabbatical driving to or from class at a university hundreds of miles away from the plant.

*Dinkins v. Farley,* 434 N.Y.S.2d at 328, 106 Misc.2d 593. Further, in discussing whether a workers' compensation analysis should be applied the court held:

> To obtain compensation benefits all that an employee need do is establish that his injury was caused by an activity related to his job. However, *respondeat superior* mandates that the employee be either under the control of the employer at the time of the injury or that he could have been. Whereas qualifying for workers' compensation benefits requires only that the injury occur out of and in the course of employment, recovery under the doctrine of *respondeat superior* necessitates that the employee be acting in the scope of his employment, a much narrower test.

*Id.* at 329, 106 Misc.2d 593. We hold that whether Zuckerman was paid workers' compensation benefits for the injuries he suffered in the accident is immaterial to the issue of AT & T's vicarious liability for his negligence.

## CONCLUSION

■ The question of whether an act of an employee is within the scope of employment is usually a matter for the jury. Nevertheless, where but one reasonable inference can be drawn from the undisputed material facts, the question is one of law for the court. *Dhanraj v. Potomac Elec. Power Co.,* 62 Md.App. 94, 101, 488 A.2d 512 (1985); *Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 265, 337 A.2d 445 (1975), *cert. denied,* 275 Md. 755 (1975). Since the only reasonable inference to be drawn from the undisputed material facts of the instant case is that Zuckerman was not acting within the scope of his employment at the time of the accident, summary judgment was properly granted in favor of AT & T.

JUDGMENT AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.