**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 11-1350**

─────────────

STACIA LYNN KERNS, Individually, and as Personal
Representative of the Estate of Dennis Gregory Kerns, Jr.
and as mother and next friend of A.K. and D.K.,

          Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

          Defendant - Appellee.

─────────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:07-cv-01006-CCB)

─────────────

Argued:  March 22, 2012         Decided:  April 20, 2012

─────────────

Before MOTZ, KING, and GREGORY, Circuit Judges.

─────────────

Affirmed by unpublished opinion.   Judge Gregory wrote the
opinion, in which Judge Motz and Judge King joined.

─────────────

**ARGUED:** Emily Claire Malarkey, Paul David Bekman, SALSBURY,
CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland, for
Appellant.   Larry David Adams, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J.
Rosenstein, United States Attorney, Michael L. Schlepp, Second
Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

The issue presented is whether the United States authorized Debra Scott to rent an automobile on a business trip for purposes of traveling from the airport to her hotel. The district court found that there was no material dispute of fact that Scott was not authorized to rent an automobile on her business trip and therefore Scott was not acting within the scope of her employment at the time of her collision with the deceased Dennis Kerns, Jr. The district court held that under Maryland law the United States could not be held vicariously liable for Scott's negligence. For the reasons that follow, we affirm the district court's ruling.

I.

This case arises out of a motor-vehicle accident on June 24, 2005, in which plaintiff Stacia Lynn Kerns's now deceased husband, Dennis Kerns, Jr., was hit by Scott on Maryland Route 175 near the Fort Meade Army Base. Scott was a contract employee for the 99th Regional Readiness Command Family Program Office ("RRC"); more specifically, Scott was the secretary and administrative assistant for the RRC family programs director. Although Scott's office was in Pennsylvania, Scott was in Anne Arundel County, Maryland, at the time of the accident to work at an RRC conference.

2

On April 27, 2005, Barbara Wilson, RRC director of family programs, sent an email to RRC staff and volunteers, noting that a conference would be held at the Annapolis, Maryland Radisson hotel on June 24-26, 2005. She stated that a few travel arrangements were possible. One option was to fly into Baltimore-Washington International Airport. "The hotel recommends the Super Shuttle . . . for transport from the airport to the hotel," the email said. "The cost is $29 per person. If there are sufficient persons flying, a van may be rented for all to travel to the hotel. Please advise of your flight schedules as soon as possible for these arrangements to be made." For those who did not wish to fly, they could drive their own cars, for which they would be reimbursed for mileage, or they could rent cars. "If you would rather take a rental car, please fill out the registration form accordingly." In all cases, the email said, an employee's travel plans must be reflected on her travel orders.

A few days before the trip, Scott had a conversation with Wilson and Thomas Cannon, a coworker, about whether Scott would like to rent a car or be listed as a driver on one of their rental cars. Scott declined both options because she planned to rent a car for her own personal purposes. Nothing in the record suggests she ever filled out the registration form indicated in Wilson's email.

On May 20, 2005, the RRC issued travel orders to Scott, and it authorized her to travel from McKees Rocks, Pennsylvania, to Annapolis, Maryland, to attend the conference. Her orders provided for government lodging and commercial air travel. Although the orders did not say how she should get from the airport to the conference center, they specifically stated that she was not authorized to rent a car. The orders said that "[i]f traveling by non-government procured commercial transportation, the maximum reimbursement will be limited to the least costly service which would have been permitted [for] satisfactory completion of the mission." Cannon's travel orders were modified on June 24, 2005, authorizing a rental car.

On June 24 Scott traveled in her own vehicle to the Pittsburgh, Pennsylvania airport and flew to Baltimore-Washington International Airport on a government-purchased ticket. Upon arrival, she rented a vehicle from the airport's Alamo Car Rental. She rented the car in her name and paid for it with her personal credit card.

June 24 was set aside on the agenda as a travel day with no scheduled meetings. Scott traveled to downtown Baltimore to see the inner harbor and the aquarium. She then drove to Fort Meade to visit the Post Exchange, where she looked at clothing. At 9:30 p.m., Scott turned into oncoming traffic and directly into

4

Dennis Kerns, Jr., who was riding a motorcycle. Kerns died of the injuries sustained in the crash.

Scott subsequently sought reimbursement for roundtrip mileage for her personal vehicle used to travel to the Pittsburgh airport, two taxi fares, and her per diem. She was reimbursed. She did not request reimbursement for her rental car.

Stacia Kerns brought suit against the United States on April 19, 2007, alleging the United States should be held vicariously liable for the negligence of its employee, Scott. On February 2, 2008, the district court granted the United States' motion to dismiss for lack of jurisdiction on the grounds that Kerns had not shown that Scott was acting within the scope of her employment, as required by 28 U.S.C. § 1346(b). This Court, on appeal, held the question was sufficiently intertwined with the merits that the plaintiff should be permitted to conduct discovery. See Kerns v. United States, 585 F.3d 187 (4th Cir. 2009). Both parties moved for summary judgment at the close of discovery. On March 28, 2011, the district court handed down its memorandum opinion, awarding summary judgment to the United States.

The district court ruled that there was not a triable dispute of fact and that the government had not authorized Scott to use a rental car during the conference. The court went on to find that even if the government authorized the rental of a car, Scott was not engaged in job-related duties at the time of the accident. We affirm the district court on the former grounds without reaching the latter.

We review de novo the district court's grant of summary judgment. Roe v. Doe, 28 F.3d 404, 406 (4th Cir. 1994). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In reviewing the disputed facts, this Court must draw all inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The United States is liable under the Federal Tort Claims Act ("FTCA") to the extent a private person would be liable under state law when a plaintiff has been injured because of the tort of an employee acting within the scope of her employment. 28 U.S.C. § 1346(b)(1). Under Maryland law, an employer may be held vicariously liable for the tortious act of its employee when the employee was acting in the scope of the employment relationship at the time of the tort. Oaks v. Connors, 660 A.2d

423, 426 (Md. 1995). An employee's tortious acts will be considered within the scope of her employment if "they were in furtherance of the employer's business and were 'authorized' by the employer." Sawyer v. Humphries, 587 A.2d 467, 470 (Md. 1991). This general rule, however, is refined in the context of negligent operation of the employee's automobile; in such cases,

> a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and . . . had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably [be] inferred.

Oaks, 660 A.2d at 426 (quoting Dhanraj v. Potomac Elec. Power Co., 506 A.2d 224, 226 (1986)) (alterations in original). The right-to-control concept is critical to the respondeat superior analysis with respect to motor vehicles. "The doctrine may only be successfully invoked when an employer has either 'expressly or impliedly, authorized the [servant] to use his personal vehicle in the execution of his duties, and the employee is in fact engaged in such endeavors at the time of the accident.'" Id. at 427 (quoting Dhanraj, 506 A.2d at 226). In other words, the test has two prongs: (1) employer authorization of the transportation method or employer control over the employee's operation of that transportation (or that transportation is a "vital necessity" to the employer's business) (2) while the

7

employee is engaged in employment duties.  We deal with the first prong, not reaching the second.

A.

Kerns argues that there is at least a triable issue of fact as to whether the government expressly or impliedly consented to the use of a rental car on the trip.  We disagree.

As Barbara Wilson noted in her April 25, 2005 email regarding transportation, travel plans must be reflected on each employee's travel orders.  Scott's travel orders specifically precluded the use of a rental car.  The email discussing the travel orders notes that "[i]f there are sufficient persons flying, a van may be rented for all to travel to the hotel." This phrase does not indicate that anyone could rent a van to travel from the airport to the hotel; only enough vans sufficient to carry those flying would be rented.

Nevertheless, there is some evidence in the record that reimbursement was sometimes given to employees for travel not initially authorized on their travel orders.  Scott testified that after-the-fact approval of rental cars was a "regular occurrence" and she had "no doubt" that she would have been paid if she had submitted a rental car reimbursement.  But Scott did not in fact seek a rental car reimbursement, suggesting that she knew it was not authorized either explicitly or implicitly.

8

Before the trip, Wilson told Scott she could travel with Wilson or Cannon in their authorized rental cars from the airport to the hotel. Wilson also offered to authorize Scott to rent a car, presumably so Scott could transport other RRC employees from the airport to the hotel. Scott declined the offers. The facts show that Scott rented her own car so that she could explore and sightsee before the conference. She did not seek authorization for the car before the trip despite the fact that she made a reservation for the car before the trip began. It is telling that the RRC altered Cannon's travel orders prior to the trip to include the use of a rental car but it did not modify Scott's.

The facts here are arguably weaker for the plaintiff than those in the relevant Maryland state court cases in which the plaintiffs could not establish respondeat superior liability. See Oaks v. Connors, 660 A.2d 423 (Md. 1995); Dhanraj v. Potomac Elec. Power Co., 506 A.2d 224 (Md. 1986); Henderson v. AT&T Info. Sys., Inc., 552 A.2d 935 (Md. Ct. Spec. App. 1989). Here, the government neither promised nor gave travel reimbursements to Scott, whereas in Henderson the plaintiff was reimbursed for mileage and travel expenses by his employer. Henderson, 552 A.2d at 939. Furthermore, Scott traveled by an expressly unauthorized form of travel prohibited by her travel orders. In contrast, the Dhanraj employer did not specifically authorize

9

any particular mode of travel, suggesting that it implicitly approved of any reasonable method of transportation -- again, a much stronger case for the plaintiff than the instant case. See Dhanraj, 506 A.2d at 227.

There may still be vicarious liability in the automobile context when "the use of the automobile was [ ] of such vital importance in furthering [the employer's] business that the control over it might reasonably be inferred." Id. at 228. The closest Maryland case to the instant facts is Regal Laundry Co., Inc. v. A.S. Abell Co., 163 A. 845 (Md. 1933). There, a Baltimore Sun reporter was returning to the office from a meeting that he was assigned to cover when he got into an accident. The Court of Appeals held that the Baltimore Sun had implicitly authorized the use of the reporter's own car because the editor knew that would be how the reporter would get to and from the meeting and because the reporter was reimbursed for his mileage. Id. at 847. Furthermore, the reporter was never diverted from his route. Id. at 848. Here, however, the use of a rental car was explicitly not authorized for Scott, and Scott was never reimbursed for her rental car expenses. Even accounting for the fact that Scott would not have rented a car were it not for the Maryland conference, Scott did not need to rent a car to arrive there. See Oaks, 660 A.2d at 427 (finding that the fact that employee used his car at work for the

10

employer's benefit did not render the drive to work "special circumstances" warranting respondeat superior liability); Barclay v. Ports Am. Baltimore, Inc., 18 A.3d 932, 938 (Md. Ct. Spec. App. 2011) ("[T]he requisite 'special circumstances' must admit some express or implied control over the vehicle or consent to its use in performing work duties."). Regal Laundry is therefore distinguishable.

We affirm the district court's finding that there is no material dispute of fact that Scott was not authorized to rent a car to travel from the Baltimore airport to the hotel. Because we hold that a rental car was not authorized for Scott, we need not reach the issue of whether she was within the scope of her employment at the time of the accident.[*]

## B.

Kerns has another argument: that the district court should have certified to the Maryland Court of Appeals the question of whether to import the traveling-employee doctrine into the tort context. The district court found that the "available state law" was not so "insufficient" that certification was appropriate. J.A. 467 n.2 (quoting Roe v. Doe, 28 F.3d 404, 407

---

[*] Nor need we analyze whether Maryland's scope-of-employment prong of the respondeat superior test is coextensive with the FTCA requirement for governmental liability that the tortfeasor acted within the scope of her employment.

11

(4th Cir. 1994)); see also Buckingham v. United States, 124 F. Supp. 2d 943, 944-45 (D. Md. 2000) (declining to certify to the Maryland Court of Appeals a question on the applicability of the traveling-employee doctrine in the respondeat superior context).

Under Maryland law, the Court of Appeals may answer questions certified to it only "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." MD. CODE ANN., CTS. & JUD. PROC. § 12-603. The Court of Appeals has noted that the purpose of the certification procedure is "to promote the widest possible use of the certification process . . . [and to] address questions of Maryland law that are unsettled, uncertain, or otherwise controversial in light of cases decided by other courts." Proctor v. Wash. Metro. Area Transit Auth., 990 A.2d 1048, 1056 (Md. 2010). Here, as the district court correctly found, there is clear appellate court precedent.

The language of Dhanraj may be amenable to two readings. The Maryland Court of Appeals either decided that importation of the traveling-employee doctrine is inappropriate or it refused to determinatively resolve the question beyond its own facts. "We see no need to resort, in the circumstances here," the court said, "to cases under the Workmen's Compensation Act and comparable employee compensation statutes to determine the

12

applicability of the doctrine of respondeat superior in this tort action." Dhanraj, 506 A.2d at 227-28.  A subsequent court of special appeals case interpreted Dhanraj to mean that Maryland courts may not import the traveling-employee doctrine into the tort context.  See Sheets v. Chepko, 573 A.2d 413, 418 (Md. Ct. Spec. App. 1990) ("[I]n Dhanraj, the Court of Appeals specifically rejected the application of principles of Worker's Compensation to a determination of whether a particular activity was within the scope of employment for purposes of establishing vicarious liability of an employer.").  There is no conflicting authority in the appellate cases of Maryland, and it was therefore not error for the district court to refuse to certify the issue to the Maryland Court of Appeals.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

13