506 A.2d 224

**Deonarine DHANRAJ et ux.**

v.

**POTOMAC ELECTRIC POWER COMPANY.**

**No. 75, Sept. Term, 1985.**

Court of Appeals of Maryland

March 27, 1986.

Eric S. Slatkin (Karl G. Feissner, John E. Beckman, Jr. and Feissner & Beckman, on brief), Langley Park, for appellant.

John Noble (Alexander J. Crow and Simpson, Simpson & Noble, on brief, Rockville, and H. Edward Holtz, on brief, Upper Marlboro), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

This appeal requires us to examine the extent to which an employer can be held vicariously liable for the negligence of an employee when at the time of the alleged negligence, the employee was driving his own vehicle en route to an employer operated training facility.

On the morning of October 18, 1983, Joseph Sandy, an employee of Potomac Electric Power Company (PEPCO), was driving his own automobile to a PEPCO training station located off of Benning Road in Washington, D.C. He carried one passenger, a fellow PEPCO employee. Normally, the two men worked at the Dickerson, Maryland plant, a location considerably closer to Sandy's Rohrersville home. PEPCO had requested that each of these employees attend a six week training course at the Benning Road facility to upgrade his job status.[1]

PEPCO did not provide any form of transportation to the facility, nor did the employees receive any compensation for gas or mileage. However, both were receiving a travel allowance pursuant to a union contract. This allowance was determined according to the distance between an employee's regular work place (here the Dickerson plant) and the training location (the Benning Road facility) without reference to the employee's place of residence or means of transportation.

Aside from the initial request for attendance and the payment of the travel allowance, PEPCO was completely uninvolved in the travel aspect of the temporary assignment. PEPCO did not specify the mode of transportation or the route of travel. Nor were the employees paid for their travel time. Their workday started when they arrived at the training center and ended when they departed. All commuting was done on their own time. In sum, they received no additional remuneration for participating in the

---

1. Upon completion of the six week training program, Sandy would have been upgraded from a Grade B Coal and Ash Equipment Operator to a Grade A Coal and Ash Equipment Operator.

training course other than the above-mentioned travel allowance.

Sandy had successfully completed five of the assigned six weeks of training. As he was driving his own vehicle to the temporary site on Tuesday morning of the sixth week, he encountered heavy traffic. At some point during the tie up, Sandy's vehicle lightly struck that of Deonarine Dhanraj, appellant.[2] Thereafter, both Sandy and Dhanraj alighted from their automobiles and exchanged information while standing between the two cars. As they were doing so, a third automobile operated by Lewis Wise struck the Sandy vehicle from behind pinning Dhanraj and Sandy between their two vehicles. Both men suffered severe injuries.

Following this mishap, Dhanraj and his wife filed suit in Prince George's County Circuit Court. Originally, Sandy and Wise were the only named defendants in the action. The declaration was later amended to include PEPCO as an additional defendant. It was claimed that PEPCO was vicariously liable for Sandy's negligence under the doctrine of *respondeat superior.*

PEPCO filed a Motion for Summary Judgment contending that it could not be held vicariously liable for the negligence, if any, of its employee Sandy. The circuit court agreed and granted the motion for summary judgment holding that as a matter of law, Sandy was not acting within the scope of his PEPCO employment at the time of the accident. Judgment for PEPCO was entered pursuant to Md. Rule 2–602, and an appeal was taken to the Court of Special Appeals. The intermediate appellate court affirmed the trial court, *Dhanraj v. Potomac Elec. Power Co.,* 62 Md.App. 94, 488 A.2d 512 (1985), and we thereafter granted certiorari.

Appellants here claim error in the trial court's refusal to permit the fact finder to determine whether Sandy's driving

---

**2.** We express no opinion as to the negligence of Sandy. The Prince George's County Circuit Court action in which this issue will be adjudicated has been continued pending the resolution of this appeal.

to a special training session located a substantial distance from his normal work site was within the scope of his employment. Appellee counters that the overwhelming majority of jurisdictions hold as a matter of law that traveling to and from work in situations analogous to that at hand does not subject the employer to tort liability under the doctrine of *respondeat superior.*

The doctrine, which has long been recognized in Maryland, *see Tome v. Parkersburg Branch R.R. Co.,* 39 Md. 36, 70–71, 17 Am.Rep. 540, 546 (1873), holds an employer vicariously liable for the tortious conduct of an employee when the employee is acting within the scope of the employment relationship. *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982). It is thus the general rule

"that a master is liable for the acts which his servant does with the actual or apparent authority of the master, or which the servant does within the scope of his employment, or which the master ratifies with the knowledge of all the material facts."

*Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 580, 119 A.2d 423 (1956). The rule, however, has been to some extent narrowed with respect to automobiles.

"[O]n account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice."

*Henkelmann v. Insurance Co.,* 180 Md. 591, 599, 26 A.2d 418 (1942).

"It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and ... had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business

that his control over it might reasonably be inferred." *Id.* (citations omitted).

The application of the doctrine "rests upon the power of control and direction which the superior has over the subordinate, and ... does not arise when the servant is not actually or constructively under the direction and control of the master." *Hooper v. Brawner,* 148 Md. 417, 421, 129 A. 672 (1925). In other words, the doctrine may be properly invoked if the master has, "expressly or impliedly, authorized the [servant] to use his personal vehicle *in the execution of his duties,* and the employee is in fact engaged in such endeavors at the time of the accident." *L.M.T. Steel Products, Inc. v. Pierson,* 47 Md.App. 633, 643, 425 A.2d 242, 248 (1981) (emphasis added). *See also Paly v. United States,* 125 F.Supp. 798 (D.Md.1954), *aff'd,* 221 F.2d 958 (4th Cir.1955). Normally, therefore, while driving to and from his job site, an employee is not acting within the scope of his employment. *See* Annot., 52 A.L.R.2d 287, 303 (1957). It is essentially the employee's own responsibility to get to or from work. *See* Restatement (Second) of Agency § 229, comment d (1958). Thus, the general rule is that absent special circumstances, an employer will not be vicariously liable for the negligent conduct of his employee occurring while the employee is traveling to or from work.

■ Appellants recognize this general rule, but argue that Sandy's six week assignment to the training facility and the fact that he was paid a travel allowance were sufficient special circumstances to take the case outside the general rule. Assuming that while in attendance at the training school, Sandy was within the scope of his employment, mere travel to and from the facility was no more within the scope of his employment than was his travel to and from his usual job site in performing his duties as a Coal and Ash Equipment Operator "B" Classification. Thus, whether or not Sandy was advancing PEPCO's interests once he arrived at the facility, he was not about his

master's business while getting there or leaving there. But, appellants argue, he was paid a travel allowance by PEPCO. They claim that the allowance established PEPCO's consent to the use of the automobile and made PEPCO liable for its negligent use. The nature of the allowance, however, belies this claim.

Under an agreement between PEPCO and Local Union 1900 of the International Brotherhood of Electrical Workers allowances for travel were established for PEPCO employees. Section 6.13 of the agreement reads:

"Employees who report at the beginning of their work to, or who leave at the end of their workday from, a location other than their regular reporting location, shall be paid a travel allowance computed as follows:

(a) The Company shall establish reporting locations consistent with regular, established business requirements and will notify the Union of such locations.

(b) Using the reporting location as a center point, circles will be drawn with radii of 7, 13, 19 and 25 miles (and additional increments of 6 miles as needed) to establish zones.

(c) The zone within 7 miles of the employee's regular reporting location shall be considered as his/her base zone.

(d) Employees who, as instructed, report at the beginning of the workday to a location other than one in their base zone shall be paid an allowance based upon the zone which the location is set.

(e) Employees who, as instructed, leave the location at the end of the workday from a location other than one on their base zone shall be paid an allowance based upon the zone in which the location is set.

(f) An allowance of $1.00 shall be paid for reporting to or leaving from the first zone outside the base zone. An additional 90 cents will be paid for each additional zone that the employee reports to or leaves from at the beginning or end of his/her workday."

The allowance paid Sandy had no direct tie to the training facility. He received it because he was traveling out of his base zone and would have been entitled to the allowance no matter why he was going beyond his base zone to report to work. There was no consent, express or implied, by PEP-CO to the use of Sandy's automobile as the means of transportation to the training facility; PEPCO was not concerned with how he got there or how he got home at the close of the workday. Sandy was entitled to the same allowance had he traveled in his own car, or as a passenger in another's car, or hired a taxicab, or walked, or even if he stayed for the six weeks in a nearby motel. He used his automobile by his own choice and for his personal convenience; he was under no instruction, direction or duty to use it. The expense of the operation of the automobile was not borne by PEPCO, and PEPCO had no right of control over Sandy in regard to it. The allowance paid did not represent maintenance of the automobile, nor was it based on the expense of its operation. In short, he could travel to and from the facility as he pleased, by any means or route he chose. PEPCO's only concern was that he take the course, not how he got there. The payment of the allowance did not invoke the doctrine of *respondeat superior.* *Regal Laundry Co. v. Abell Co.*, 163 Md. 525, 163 A. 845 (1933) and *L.M.T. Steel Products, Inc. v. Pierson*, 47 Md. App. 633, 425 A.2d 242 (1981), relied on by appellants, are inapposite. They turned on a finding that the employer authorized the employee to use his personal vehicle in the performance of his duties, a fact which is not present here.

■ Appellants urge us to apply the special mission exception to the workmen's compensation version of the "going and coming" rule. They cite to *Reisinger-Siehler Co. v. Perry*, 165 Md. 191, 167 A. 51 (1933) and *Director of Finance v. Alford*, 270 Md. 355, 311 A.2d 412 (1973). We see no need to resort, in the circumstances here, to cases under the Workmen's Compensation Act and comparable employee compensation statutes to determine the applicabil-

ity of the doctrine of *respondeat superior* in this tort action.

We conclude that if Sandy was negligent as alleged, PEPCO was not vicariously liable for his tortious conduct under the doctrine of *respondeat superior.* PEPCO did not expressly or impliedly consent to the use of the automobile; it had no right to control Sandy in its operation, and the use of the automobile was not of such vital importance in furthering PEPCO's business that the control over it might reasonably be inferred. We hold that the Circuit Court for Prince George's County was correct in granting summary judgment as to PEPCO, and, therefore, the Court of Special Appeals did not err in affirming the judgment of the circuit court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.