573 A.2d 413

**Ruth E. SHEETS, et vir.**

v.

**Donald Lynn CHEPKO, et al.**

**No. 1349, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 11, 1990.

William O'B. Finch, Jr. (Hollman, Hughes, Finch & Maguire, on the brief), Westminster, for appellants.

Michael J. McAuliffe (John M. Quinn and Quinn & McAuliffe, on the brief for appellee, Board of Educ. of Carroll County), Rockville, for appellees.

Argued before GARRITY, KARWACKI and CATHELL, JJ.

CATHELL, Judge.

Donald Chepko (Chepko) was employed by the Carroll County Board of Education (Board) as a floating custodian who moved between schools in the county, filling in for permanently assigned custodians who were absent. On October 28, 1985, while on his way to a school to perform his custodial duties, Chepko was involved in an automobile accident. As a result of the accident, Ruth and Gilbert Sheets filed suit against Chepko and the Carroll County Board of Education, alleging that Chepko was negligent and that the Board was vicariously liable for the actions of Chepko, its employee, under the doctrine of respondeat superior.

The Circuit Court for Carroll County granted summary judgment in favor of the Board of Education, and it is from that judgment that this appeal arises. We hold that the grant of summary judgment was proper, under the facts of the case at bar, and we affirm the decision of the trial court. We explain our reasons for affirming, and supply the facts of the instant case where necessary.

Maryland Rule 2–501, governing summary judgment, provides in subsection (e) that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no

genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Only a dispute over a fact which is material to the outcome of the case will preclude summary judgment. *Keesling v. State,* 288 Md. 579, 420 A.2d 261 (1980).

According to *Foy v. Prudential Ins. Co.,* 316 Md. 418, 423, 559 A.2d 371 (1989), "[a]lthough a trial court is allowed discretion to *deny* a motion for summary judgment in favor of a full hearing on the merits, a court cannot draw upon any discretionary power to *grant* summary judgment." (emphasis in original, citation omitted) If the Plaintiff presents any legally relevant and competent evidence, however slight, from which a rational mind could infer a dispute as to a material fact in issue, a trial judge invades the province of the jury if it grants a summary judgment motion. *Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237 (1966); *DeBleecker v. Montgomery County,* 292 Md. 498, 438 A.2d 1348 (1982). If the facts of the case are not in dispute, but are susceptible of more than one reasonable inference, the party opposing the summary judgment is entitled to have the inference drawn in the light most favorable to his contention and against the party making the motion. *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980); *Henderson v. AT & T Information Systems,* 78 Md.App. 126, 132, 552 A.2d 935 *cert. denied,* 316 Md. 364, 558 A.2d 1206 (1989); *Maloney v. Carling National Breweries, Inc.,* 52 Md.App. 556, 451 A.2d 343 (1982). Hence, if after resolving all inferences in favor of the non-moving party we find that there is a genuine dispute as to a material fact, we must find the award of summary judgment to be error. We find no genuine dispute of material fact in the case at bar.

The doctrine of respondeat superior allows an employer to be held "vicariously liable for the tortious conduct of an employee when the employee is acting within the scope of the employment relationship." *Dhanraj v. Potomac Elec. Power Co.,* 305 Md. 623, 627, 506 A.2d 224 (1989) (citation

omitted). "[T]he test for determining if an employee is acting within the scope of employment is 'whether the servant was advancing his master's interests in doing what he did at the time he did it.'" *Henderson v. AT & T Information Systems,* 78 Md.App. 126, 132, 552 A.2d 935 (1989), citing *Rusnack v. Giant Food, Inc.* 26 Md.App. 250, 261–65, 337 A.2d 445 *cert. denied,* 275 Md. 755 (1975).

Ordinarily, the issue of whether an act is within the scope of the employee's duty while acting in furtherance of his employer's business is to be determined by the jury as a matter of fact and not by the court as a matter of law. In some instances, however, "[w]here there is no conflict in the evidence relating to the question and but one inference can be drawn therefrom, the question is one of law for the court." *Rusnack v. Giant Food, Inc., supra,* 26 Md.App. at 265, 337 A.2d 445 (citation omitted).

Certain specialized rules have evolved over the years concerning the application of the doctrine of respondeat superior where the alleged tortious conduct involved the use of an automobile. The Court of Appeals, in *Henkelmann v. Metropolitan Life Insurance Co.,* 180 Md. 591, 599, 26 A.2d 418 (1942), stated:

> In recent years, on account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice.... It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and ... had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably [be] inferred. [citations omitted]

Thus, "[t]he general rule is that, absent special circumstances, an employer will not be vicariously liable for the negli-

gent conduct of his employee occurring while the employee is traveling to or from work." *Henderson, supra,* 78 Md.App. at 133, 552 A.2d 935, citing *Dhanraj v. Potomac Elec. Power Co.,* 305 Md. 623, 628, 506 A.2d 224 (1986).

An analysis of the facts of several of the most important cases involving the doctrine of respondeat superior where automobiles are involved is helpful in determining the applicability of the doctrine to the case at bar. *Henkelmann, supra,* involved an insurance salesman who was involved in an accident while driving his personal vehicle on route to his assigned territory. The Court of Appeals determined that his employer was not vicariously liable for the salesman's negligence, since a vehicle was not necessary for the performance of the salesman's duties, and since the insurance company that employed him had never consented to or authorized the use of his personal vehicle either for travel to or from his assigned area or while working within it.

*Dhanraj v. Potomac Elec. Power Co., supra,* dealt with an employee of Potomac Electric Power Company (PEPCO), Joseph Sandy, who was involved in an accident while travelling to one of the company's training stations to participate in a one-time six-week training course. Ordinarily, Sandy's job was to operate coal and ash equipment. His workday began when he arrived at the job site and ended when he left. The training course was being conducted during normal work hours. Even after he began his six week assignment to the training station, his workday did not begin until he arrived at the facility. He received a small travel allowance, as required by union contract, but PEPCO was otherwise uninvolved in Sandy's transportation arrangements. As a result of the accident, the driver of the other vehicle involved in the accident filed suit against Sandy and against PEPCO, alleging vicarious liability on the part of the utility company under the doctrine of respondeat superior.

The circuit court granted PEPCO's motion for summary judgment, holding that, as a matter of law, Sandy was not acting within the scope of his employment at the time of the

accident. Chief Judge Gilbert, writing for this Court, affirmed the trial court. On a writ of certiorari, the Court of Appeals, adopting and paraphrasing the language of our decision, likewise held that PEPCO was not vicariously liable for Sandy's alleged tortious conduct, since the employer did not expressly or impliedly consent to Sandy's use of a personal automobile, and it therefore had no right to control his use of the vehicle, and since use of the vehicle "was not of such vital importance in furthering PEPCO's business that the control over it might reasonably be inferred." *Dhanraj, supra*, 305 Md. at 631, 506 A.2d 224.

Most recently, we addressed the question of an employer's liability for an employee's auto tort in *Henderson, supra*. In that case, Daniel Zuckerman, an employee at an AT & T facility in New Jersey, enrolled in a one-year graduate program at the University of Virginia. Zuckerman had arranged for AT & T to reimburse his tuition and, upon successful completion of the course, to pay him an increased salary when he returned to work at AT & T. Zuckerman was not required to return to work for AT & T, however the company agreed to reimburse him for certain travel expenses related to the move to Virginia. The employee, himself, determined the method of transportation he would use to get to Virginia. Zuckerman's last day of work for AT & T was Friday, January 19, 1986, and he was involved in an accident the next day while traveling on I-95 through Maryland, on route to Virginia.

The trial court granted summary judgment to the employer in the suit arising from the accident. This Court affirmed, holding that Zuckerman was not acting within the scope of his employment when the accident occurred. We found the doctrine of respondeat superior to be inapplicable, even though Zuckerman was given a specific amount of reimbursement per mile, and despite the fact that AT & T knew he was driving and consented to it.

Zuckerman was not "on the job" at the time of the accident. Further, he was not hired by AT & T for a position that required any amount of driving. This was a

one time journey which Zuckerman agreed to make at his convenience, on a Saturday morning. Unlike the PEPCO employee in *Dhanraj*, Zuckerman was a salaried employee. That does not mean, however, that Zuckerman was being compensated for his time traveling to Virginia. While at graduate school Zuckerman was to be paid to pursue a course of study which hopefully would benefit AT & T in the future. That was the business purpose Zuckerman was executing, not driving his car for the benefit of AT & T.

*Henderson, supra,* 78 Md.App. at 136–37, 552 A.2d 935. We concluded by stating that, "[s]ince the only reasonable inference to be drawn from the undisputed material facts of the instant case is that Zuckerman was not acting within the scope of his employment at the time of the accident, summary judgment was properly granted in favor of AT & T." *Id.* at 139, 552 A.2d 935.

In the case sub judice, appellants argue that the issue of the Board of Education's vicarious liability for Chepko's negligence should have gone to the jury, since more than one reasonable inference with regard to the scope of employment may reasonably be drawn from the undisputed facts. They point out that Chepko and the four other floating custodians, who were paid for an extra half-hour before and after work each day, were on a different pay system than the 150 non-floating custodians, who were paid only for the hours they actually worked.

Appellants focus on this and other facts to distinguish the case at hand from *Dhanraj* and *Henderson* in which the drivers were found not to be "on the job". Unlike the employees in those cases, appellees maintain, Chepko had no fixed place of employment. He was required to service all 30 schools in the county. Only 3 to 5 schools in the county were within walking distance of Chepko's home and there was no public transportation available in Carroll County. In addition, appellants point to a letter from Mr. Chepko's supervisor to the Motor Vehicle Administration (MVA) as support for the proposition that Chepko was

acting within the scope of his employment at the time of the accident. The letter stated as follows:

TO WHOM IT MAY CONCERN:

Donald Chepko is employed by the Carroll County Board of Education as a floating (substitute) custodian. In his work he drives all over the county on all types of roads to serve in our schools as needed.

Sincerely,

/s/

James P. Gillespie

Supervisor of Plant Operations

This letter was completely unrelated to the incident in question, but rather served as proof to the MVA, as part of an investigation by its Medical Advisory Board into Chepko's pre-existing health condition, that Mr. Chepko needed transportation to and from his job. The letter does not state that driving is a requirement for the job, nor does it state that it is a part of his duties.

These arguments of appellants Sheets fail for several reasons. Chepko was never required to report to more than one school on any given day. His job responsibilities did not include driving, but were limited to general custodial and maintenance duties. He was compensated for 30 minutes of time before and after his work day, which began at 3:00, p.m. He was paid the same amount, regardless of his actual travel time. Mr. Chepko admits that he had no authorization from any of his superiors at the Board of Education to report to work early, yet he left his home at approximately 2:00 and the accident occurred at approximately 2:15. Mr. Chepko, therefore, was not being paid at the time of the accident. Even if the accident *had* occurred during the 30 minute period for which Mr. Chepko was compensated, that would not constitute the type of "special circumstances" required by the decisions in *Dhanraj, supra*, and *Henderson, supra*, which are a prerequisite to the imposition of vicarious liability on an employer for an auto accident caused by an employee while going to or from work.

There is no indication that the Board of Education manifested any consent to, or control over, Mr. Chepko's means of transportation to or from his job which is requisite to render the Board vicariously liable in this instance. He could take any route and any means of transportation to get to work. Chepko's use of his personal vehicle was not of such vital importance to the business of the Board of Education as to reasonably infer that the Board had control over his use of the vehicle.

In support of their arguments that the Board *did* control Chepko's use of his vehicle, appellants rely on *Regal Laundry v. Abell Co.*, 163 Md 525, 163 A. 845 (1933); and *L.M.T. Steel Products v. Peirson*, 47 Md.App. 633, 425 A.2d 242 (1981). Both of these cases are factually distinguishable from the case at bar. In *Regal*, a newspaper reporter was involved in an accident while returning from a political event his employer had assigned him to cover. There the Court held that the accident had occurred within the scope of the reporter's employment, since he was on his way back to the office for further assignment. The *Dhanraj* Court distinguished *Regal* on its facts, stating that it "turned on a finding that the employer authorized the employee to use his personal vehicle in the performance of his duties, a fact which is not present here." *Dhanraj, supra,* 305 Md. at 630, 506 A.2d 224. The same distinction applies here. Chepko's duties included only custodial and maintenance tasks and did not include driving. There is no evidence of authorization of Chepko's driving by the Board.

*L.M.T., supra,* involved a construction employee who left a job site and used his personal vehicle to use a public telephone for business reasons. His employer was found to be vicariously liable for his negligence in an accident which occurred on his way. This accident, unlike the one in the case at bar, occurred during working hours, and the employer had consented to the employee's use of his personal vehicle for this purpose. Neither of these cases provide any support for appellants' contentions regarding the Board's control of the Chepko vehicle.

In their brief, appellants assert that Maryland Courts are likely to follow the example set by Courts in foreign jurisdictions, such as the California Supreme Court. In *Hinman v. Westinghouse Electric Co.*, 2 Cal.3d 956, 88 Cal. Rptr. 188, 471 P.2d 988 (1970), that Court held that if an employment contract made travel time a part of the work day, the employer could be held vicariously liable for the negligence of the employee while traveling to and from work.[1] We disagree, and we note that as recently as 1989, this Court, in *Henderson, supra*, reiterated the traditional rule that travel to or from work, absent special circumstances, does not fall within the scope of employment.

In each of the other foreign cases cited by appellants, the employee was on his or her way to or from the performance of a special task or mission for the employer. *See Van*

---

1. A thorough search has revealed a plethora of California cases relying on the *Hinman* rationale, thus establishing the *Hinman* doctrine (of employer's liability where travel time is compensated) to be the law in that state. Only a handful of other jurisdictions have even cited *Hinman*, and all of those jurisdictions are located West of the Mississippi River. These include Alaska, Arizona, Hawaii, Idaho, Nevada, Oklahoma, Washington and Wyoming. The cases in those jurisdictions which cite *Hinman* are: *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972); *Luth v. Rogers and Babler Constr. Co.*, 507 P.2d 761 (Alaska 1973); *Faul v. Jelco*, 122 Ariz. 490, 595 P.2d 1035 (1979); *Kang v. Charles Pankow Assoc.*, 5 Haw.App. 1, 675 P.2d 803 (Hawaii 1984); *National Convenience Stores v. Fantauzzi*, 94 Nev. 655, 584 P.2d 689 (1978); *Matter of Barker*, 110 Idaho 871, 719 P.2d 1131 (1986); *Lang v. Dept. of Labor & Indus. of State*, 35 Wash.App. 259, 665 P.2d 1386 (1983); *Anderson v. Falcon Drilling Co.*, 695 P.2d 521 (Okla.1985); *Beard v. Brown*, 616 P.2d 726 (Wyo.1980).

Of these cases, four cite *Hinman* for the exception to the general rule that an employer is not liable for an employee's negligent acts committed while traveling to and from work, and in these four cases the employer was found to be vicariously liable. They include, *Fruit v. Schreiner, Luth v. Rogers and Babler Constr. Co., National Convenience Stores v. Fantauzzi*, and *Anderson v. Falcon Drilling Co.* None of these cases are factually similar to the one at bar. Three more cases from foreign jurisdictions, *Faul v. Jelco, Kang v. Charles Pankow Assoc.*, and *Lang v. Dept. of Labor & Indus. of State*, cited *Hinman* with apparent approval, but held that the employer should not be held vicariously liable under the facts of those particular cases. In two more cases, *Matter of Barker* and *Beard v. Brown*, the *Hinman* doctrine was cited with approval only in the dissent.

**54**

*Osdol v. Knappton Corporation,* 91 Or.App. 499, 755 P.2d 744 (1988) (filling in on one-time basis for vacationing manager at another location with the option of staying overnight or commuting); *Jones v. Aldrich Co., Inc.,* 188 Ga. App. 581, 373 S.E.2d 649 (1988) (accident occurred while employee on her way home after inspecting a work site as requested by her employer). This factual distinction renders these cases inapposite to the case at bar.

The Sheetses mention in their statement of facts, but do not address in the argument in their brief, a stipulation by the Board, for purposes of Worker's Compensation, that injuries received by Chepko in the accident were work-related. For purposes of clarification, we note that in *Dhanraj,* the Court of Appeals specifically rejected the application of principles of Worker's Compensation to a determination of whether a particular activity was within the scope of employment for purposes of establishing vicarious liability of an employer.

The only reasonable inference which can be drawn from the undisputed material facts of the case at bar is that Mr. Chepko was not acting within the scope of his employment at the time of the accident. Summary judgment, therefore, was properly granted in favor of the Carroll County Board of Education.

JUDGMENT OF THE TRIAL COURT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.