**Vallerie A. GERMAIN,
et al., Plaintiffs,**

v.

**William NORRIS, Jr., et
al., Defendants.**

**Civil No. JFM 07–376.**

United States District Court,
D. Maryland.

Feb. 21, 2008.

586

John F. Yaninek, Mette Evans and Woodside, Harrisburg, PA, for Plaintiffs.

Mark I. Cantor, Law Office of Andrew Greenspan, William Joseph Jackson, Moore and Jackson LLC, Towson, MD, Christopher J. Lyon, Semmes Bowen and Semmes PC, Daniel Karp, Karpinski Colaresi and Karp PA, Pamela Thomas Broache, Segal McCambridge Singer & Mahoney, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

J. FREDERICK MOTZ, District Judge.

Plaintiffs Vallerie and Emanuel Germain have filed suit against defendants William Norris ("Norris"), Barrett Business Services, Incorporated ("Barrett"), and Mass Electric Construction Company ("Mass Electric"), seeking recompense for losses arising out of an automobile accident that occurred in Baltimore, Maryland on February 21, 2006. In particular, plaintiffs allege that Norris was negligent in the operation of his automobile, and that his negligence caused injuries to plaintiff Vallerie Germain. (Second Am. Compl. Count I.) Plaintiffs further claim that defendants Barrett and Mass Electric are vicariously liable under a theory of respondeat superior. (*Id.* Count II.) Finally, plaintiffs assert that Emanuel Germain, as Vallerie Germain's spouse, has a derivative claim for loss of consortium. (*Id.* Count III.)

Plaintiffs have filed a motion for partial summary judgment, arguing that there are no genuine issues of material fact with respect to Norris' liability. Defendants Barrett and Mass Electric have filed their own motions for summary judgment, contending that they are not vicariously liable as a matter of law. For the reasons discussed below, plaintiffs' motion is granted, and defendants' motions are denied.

### FACTS

The facts relevant to the pending motions are largely undisputed. At the time of the accident, Norris had been employed with Barrett since approximately 2002.[1]

(Dep. of W. Norris at 12.) Barrett is an employment agency that contracted with Mass Electric to provide "flaggers" at Mass Electric's various job sites.[2] (Dep. of J. Gallo at 10.) Norris was one such flagger, and he had been working on Mass Electric projects for approximately a year before the accident. (Dep. of W. Norris at 13.) On the day at issue, Norris had been working at Baltimore–Washington International Airport before his supervisor instructed him to report to a different job site in Baltimore City. (*Id.* at 15–16.) At that time, Norris began to drive—in his personal vehicle—to the new job site. (*Id.* at 17.) Norris remembers leaving the airport and traveling toward Baltimore but remembers nothing after he was at "the end of 295, beginning of Martin Luther King Boulevard ..." (*Id.* at 51.)

At roughly the same time, plaintiff Vallerie Germain ("Mrs. Germain") was driving a bus for her employer, Capital Trailways, on Russell Street in Baltimore. (Second Am. Compl. ¶¶ 8–11; Dep. of V. Germain at 6.) Mrs. Germain was traveling southbound in the left lane, at approximately 25–30 miles per hour; the speed limit was 25 miles per hour. (Second Am. Compl. ¶ 11; Dep. of V. Germain at 13; Def. Mass Electric's Opp'n to Pls.' Mot. for Partial Summ. J., Ex. 3.) At that time, she saw Norris' 2005 Chevrolet Colorado pickup truck traveling southbound on Russell Street in the right lane. (Second Am. Compl. ¶ 11; Dep. of W. Norris at 9.) The truck was "swerving back and forth" in the lane. (Dep. of V. Germain at 10.)

For reasons unknown, Norris then stopped his vehicle in the street.[3] (*Id.*)

---

1. Whether Barrett and/or Mass Electric were Norris' employers, co-employers, or not his employers at all is not at issue in this motion. (Def. Barrett's Mem. in Supp. of Mot. for Summ. J. at 6.)

2. A "flagger" is someone who notifies construction workers of on-coming traffic. (*See* Def. Mass Electric's Opp'n to Pls.' Mot. for Partial Summ. J. at 3.)

3. Norris does not remember anything about the accident; in fact, he does not even re-

Seeing the truck swerve and then stop, Mrs. Germain slowed the bus briefly, but then accelerated slightly as she believed that Norris intended to let her pass. (*Id.* at 9–14.) When Mrs. Germain's bus was about ten feet from his truck, Norris abruptly turned into the left lane without using his turn signal, cutting in front of the bus. (*Id.* at 10–14.) In response to this sudden turn, Mrs. Germain blew the horn of the bus and "[l]aid [her] foot on the brake." (*Id.* at 16–17.) While putting her foot on the brake, Mrs. Germain also pulled on the steering wheel and arched her back in order to apply additional pressure. (*Id.* at 17.) Unable to stop in time, Mrs. Germain's bus collided with Norris' pick-up truck. (*Id.*) At all relevant times, Mrs. Germain was wearing her seatbelt. (*Id.*)

After the collision, Mrs. Germain called the police, and exited the bus to set up flares. (*Id.* at 19–20.) She then walked over to the pick-up truck and checked on Norris, who was nonresponsive and apparently unconscious. (*Id.* at 20.) At some point, after the paramedics arrived, Mrs. Germain drove the bus to the bus depot, where she took and passed a drug test. (*Id.* at 23–24.)

Mrs. Germain filed this lawsuit on February 9, 2007. Alleging negligence, she seeks damages for pain and suffering, mental anxiety, humiliation and embarrassment, incidental costs, loss of life's enjoyment, medical expenses, lost wages, and lost earning capacity. (Second Am. Compl. ¶ 18.) Mr. Germain makes a claim for loss of consortium, seeking damages for deprivation of the society, assistance, services, and companionship of his wife. (*Id.* ¶ 31.) Plaintiffs have filed a motion for partial summary judgment on the issue of Norris' liability, and Barrett and Mass

Electric have filed summary judgment motions seeking dismissal of all claims against them.

## ANALYSIS

### I. Legal Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this procedural posture, the facts will be construed in the light most favorable to, and all justifiable inferences will be drawn in favor of, the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Plaintiffs' Motion for Partial Summary Judgment

■ Plaintiffs have moved for partial summary judgment on the negligence and loss of consortium claims, asserting that there are no genuine issues of material fact concerning Norris' liability. In Maryland, there are three elements of an action sounding in negligence: "First, the defendant must be under a duty to protect the plaintiff from injury. Second, the defendant must fail to discharge that duty. Third, the plaintiff must suffer actual loss or injury proximately resulting from that failure." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 642 A.2d 219, 225 (1994). The first two elements—commonly known as duty and breach—are at issue here, as is any contributory negligence of Mrs. Germain.

■ Drivers have a duty to exercise reasonable care for the sake of pedestrians and other motorists. *See Ghirardello v. Malina*, 238 Md. 498, 209 A.2d 564, 569

---

member being on Russell Street. (Dep. of W. Norris at 27 ("Q: Do you remember being on Russell Street? A: No. Q: Do you remember the accident happening? A: No.").)

(1965) ("And, even though entitled to the statutory right of way, a driver is not relieved from the duty of using reasonable care to avoid a collision."). Moreover, the evidence presented demonstrates that Norris failed to discharge his duty. In particular, Mrs. Germain's unchallenged testimony highlights Norris' swerving, stopping, and illegal left turn into her lane. (Dep. of V. Germain at 10–14.) In the absence of other evidence, this testimony is sufficient to prove that Norris breached his duty of reasonable care.[4]

■ However, Barrett and Mass Electric focus on the question of whether or not Mrs. Germain was contributorily negligent. *(See* Def. Mass Electric's Opp'n to Pls.' Mot. for Partial Summ. J. at 9–14.) In particular, Barrett and Mass Electric emphasize that Mrs. Germain's testimony establishes the following, which they claim is sufficient to raise genuine issues of material fact with respect to contributory negligence:

(1) Mrs. Germain may have been speeding; [5]

(2) Mrs. Germain believed that Norris did not know where he was going;

(3) Mrs. Germain was unsure whether Norris had seen the bus;

(4) Mrs. Germain believed that Norris was going to turn left; and

(5) Mrs. Germain accelerated immediately before the accident.

*(Id.* at 12.)

■■ Of course, "[t]he burden of proving all of the elements of contributory negligence is on the defense." *McQuay v. Schertle,* 126 Md.App. 556, 730 A.2d 714,

720 (1999). Barrett and Mass Electric have not met that burden here. First, speeding alone, without evidence of a causal connection to the accident, is insufficient to give rise to an inference of contributory negligence. *Myers v. Bright,* 327 Md. 395, 609 A.2d 1182, 1186–87 (1992) ("Even assuming [plaintiff] was definitely speeding, she is not barred from recovery unless the accident can be at least partly attributable to her rate of travel."); *Alston v. Forsythe,* 226 Md. 121, 172 A.2d 474, 477 (1961) ("Exceeding the speed limit does not constitute actionable negligence unless it is a proximate cause of injury or damage."). In response to this legal proposition, Barrett and Mass Electric emphasize that they do not rely on the alleged speeding alone, but rather on the entire series of facts laid out above, *see supra.* They contend that those facts—considered in totality—are sufficient to justify sending the contributory negligence question to a jury.

Yet even construed in the light most favorable to defendants, those facts would not support a finding of contributory negligence. The evidence simply does not indicate that Mrs. Germain breached her duty of reasonable care; indeed, the evidence does not show that Mrs. Germain did anything wrong whatsoever. Mrs. Germain was driving safely in her own lane, at a reasonable speed, and with apparent attention to her surroundings. She was entitled to presume that other drivers would exercise reasonable care and would not, suddenly and illegally, swerve into her lane. *See Myers,* 609 A.2d at 1185 ("Drivers . . . are ordinarily entitled to assume that other drivers are obeying the law."). Although she believed that Norris was going

---

**4.** Mrs. Germain's deposition testimony is the only evidence in light of Norris' memory loss.

**5.** Barrett and Mass Electric also submit evidence that Mrs. Germain may have a history of driving her bus at speeds substantially above the speed limit. *(Id.* Ex. 4.) Regardless of the admissibility of this evidence, its probity is quite low in light of the absence of a causal connection between the alleged speeding and the accident. *See infra.*

to turn left, it was not unreasonable for her to lightly accelerate when she did.[6] To the contrary, the only conclusion that can be reached from the evidence presented is that Mrs. Germain acted reasonably in light of another motorist's erratic driving. Consider, for example, these portions of Mrs. Germain's testimony:

> As I proceeded down the road, on the left lane I seen [sic] the car up little further on the right lane, swerving back and forth. And I slowed down and after I seen [sic] that this car stopped moving, and was just sitting hesitant, I proceeded down the street. No more than ten feet in front of me, he decided to turn in front of me.

(Dep. of V. Germain at 9–10.)

> Q: Did you have any concerns about the fact that he stopped in the middle of the road?

> A: No, I thought he was going to wait until after I went by him to finish doing whatever he was doing.

> Q: Did he have a blinker on?

> A: No.

(*Id.* at 14.)

▬ As these excerpts demonstrate, Mrs. Germain's testimony does not support a conclusion that she breached any duty of reasonable care. While Barrett and Mass Electric might speculate that Mrs. Germain could have acted differently, the evidence does not support a finding that she *should* have acted differently.[7] *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir.1998) ("As a consequence of this lack of evidence, any suggestion [of negligence] rests on mere speculation and conjecture ...."). Accordingly, plaintiffs' motion for partial summary judgment on the question of liability is granted.[8]

**6.** The fact that Mrs. Germain did not know if Norris had seen her bus is immaterial because, as stated, she is entitled to presume that other motorists will exercise reasonable care in changing lanes. Moreover, it is objectively unreasonable to expect that Mrs. Germain could know what Norris did or did not see.

**7.** Even if the facts could support a finding that Mrs. Germain acted negligently, Barrett and Mass Electric have entirely failed to meet their burden with respect to the causation aspect of contributory negligence. A plaintiff's negligence bars recovery only if the negligence was a proximate cause of the injury or accident. *See, e.g., Prudential Secs. Inc. v. E–Net, Inc.*, 140 Md.App. 194, 780 A.2d 359, 377 (2001) ("Contributory negligence defeats recovery because it is a proximate cause of the accident ..."); *Batten v. Michel*, 15 Md.App. 646, 292 A.2d 707, 711–12 (1972) ("Contributory negligence is an affirmative defense ... [that], if present, defeats recovery because it is a proximate cause of the accident ..."). Here, Barrett and Mass Electric have put forth absolutely no evidence that could support a finding that Mrs. Germain's alleged negligence was causally related to the accident. Even assuming the evidence raises genuine issues of material fact concerning wheth-

er Mrs. Germain acted negligently, there is no indication that the accident would have been prevented had Mrs. Germain acted differently; for example, there is no accident reconstruction expert that could string together a causal theory from the limited evidence presented. In the absence of causal evidence, Barrett and Mass Electric have failed to carry their burden because contributory negligence requires a causal relationship between the alleged negligence and the injury. *See Rosenthal v. Mueller*, 124 Md.App. 170, 720 A.2d 1264, 1269 (1998) ("Coincidental negligence, even assuming it to exist, that does not contribute to the accident is immaterial.").

**8.** Plaintiffs also move for partial summary judgment on Mr. Germain's loss of consortium claim. *(See* Pls.' Mot. for Partial Summ. J at 11–13.) The gravamen of this motion is that because loss of consortium claims are derivative of the injured spouse's claim, a finding that Norris had a duty and breached his duty flows logically to Mr. Germain's loss of consortium claim. Defendants argue that summary judgment is inappropriate here because discovery on the recently-added loss of consortium claim has not been completed. *(See* Def. Mass Electric's Opp'n to Pls.' Mot. for Partial Summ. J. at 14–15.) However,

### III. Barrett and Mass Electric's Motions for Summary Judgment

 Defendants Barrett and Mass Electric have moved for summary judgment on all counts, arguing that Norris was not acting within the scope of his employment at the time of the accident and, consequently, that vicarious liability is improper.[9] For the reasons below, Barrett and Mass Electric's motions for summary judgment are denied.

 "The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467, 470 (1991). However, in automobile accident cases, the rule has been "to some extent narrowed ..." *Dhanraj v. Potomac Elec. Power Co.*, 305 Md. 623, 506 A.2d 224, 226 (1986); *Sheets v. Chepko*, 83 Md.App. 44, 573 A.2d 413, 414 (1990) ("Certain specialized rules have evolved over the years concerning the application of the doctrine of respondeat superior where the alleged tortious conduct involved the use of an automobile."). In particular, Maryland has developed a two-part test, focusing on whether an employer (1) "expressly or impliedly consents to the use of the automobile" and (2) had the "right to control the servant in [the automobile's] operation ..." *Henkelmann v. Metro. Life Ins. Co.*, 180 Md. 591, 26 A.2d 418, 423 (1942).

 From this test—requiring both consent and a right to control—the general rule has developed that "absent special circumstances, an employer will not be vicariously liable for the negligent conduct of his employee occurring while the employee is traveling to or from work."[10] *Dhanraj*, 506 A.2d at 226. Barrett and Mass Electric contend that this rule applies in the instant case, and summary judgment should be granted accordingly.

This argument fails for one critical reason: at the time of the accident, Norris was *driving between job sites* and not "to or from work." Thus, the general rule precluding vicarious liability does not apply. Each of the cases relied upon by Barrett and Mass Electric are distinguishable on this basis, among others. First,

discovery on issues related to the loss of consortium claim will have no bearing on the issue of Norris' duty and breach. Accordingly, on this limited basis, plaintiffs' motion for partial *summary judgment is granted*. However, this does not preclude defendants from fully litigating, for example, the issues of loss, causation, and damages.

9. As an initial matter, I reject plaintiffs' argument that this Court is bound by the Worker's Compensation decision, (Pls.' Opp'n to Def. Barrett's Mot. for Summ. J., Ex. M), which may have different standards for the scope of employment analysis and was certainly undertaken for different purposes. *See Sheets v. Chepko*, 83 Md.App. 44, 573 A.2d 413, 418 (1990) ("The [plaintiffs] mention in their statement of facts ... a stipulation by the [employer], for purposes of Worker's Com-

pensation, that injuries received by [the employee] in the accident were work-related.... [W]e note that ... the Court of Appeals specifically rejected the application of principles of Worker's Compensation to a determination of whether a particular activity was within the scope of employment for purposes of establishing vicarious liability of an employer."); *Henderson v. AT&T Info. Sys.*, 78 Md.App. 126, 552 A.2d 935, 940–41 (1989) (stating that plaintiffs should not "confuse questions of scope of employment for purposes of workers' compensation with those pertaining to third party negligence actions").

10. The *Dhanraj* court also phrased the rule this way: "Normally, therefore, while driving to and from his job site, an employee is not acting within the scope of his employment." 506 A.2d at 226.

Barrett and Mass Electric highlight *Dhanraj* itself, in which the plaintiff was injured in a car accident involving the employee of the defendant-corporation. *Id.* at 224–25. At the time of the accident, the employee was driving (in his own car) from his home to a training facility; the Maryland Court of Appeals found no special circumstances justifying a departure from the general rule. *Id.* at 225–26. Accordingly, the court affirmed the trial court's grant of summary judgment in favor of the employer.[11] *Id.* at 228. However, the *Dhanraj* court did imply that if an employer "authorized the employee to use his personal vehicle in the performance of his duties," vicarious liability might be appropriate. *Id.* at 227.

*Dhanraj* is thus distinguishable on two key grounds: (1) Norris was driving while at work rather than driving *to or from work,* rendering the general rule inapplicable, and (2) the evidence presented is sufficient for a jury to conclude that Barrett and Mass Electric consented to Norris' use of his own automobile in the performance of his duties and had control of its operation. On this latter point, Barrett's own brief is instructive, as it admits that Norris was "*required to have his own vehicle*" and that his supervisor "*directed* Norris ... to move to [another job site] ..." (Def. Barrett's Mem. in Supp. of Mot. for Summ. J. at 3 (emphasis added).) Moreover, "[m]oving from one job site to another during the day was *a normal part of the job* ..." (*Id.* (emphasis added).) At all relevant times, Norris was on the clock, driving from one job site to another, and traveling at the instruction of his employer. Thus, the general rule dealing with travel to and from work is inapplicable here.

*Henderson v. AT&T Information Systems,* 78 Md.App. 126, 552 A.2d 935, 937 (1989), is also easily distinguished on the ground that the employee in that case was not on the job at the time of the accident— rather, he was relocating from his home in New Jersey to his employer-subsidized graduate school in Virginia. Additionally, his actual job required no driving. *Id.* at 940. In this case, Norris was working at one site and then told to travel to another site; in short, he was clearly on the job at the time of the accident. Moreover, Norris testified that he regularly had to drive from one job site to another during the course of a day, demonstrating that driving was a part of his job. *(See* Dep. of W. Norris at 17 ("Q: Was this the first time that you had switched job site [sic] from being down at the airport in the morning to being near the Ravens' stadium site in the afternoon? A: No. There were plenty of days when we worked a number of sites.").)

Barrett and Mass Electric also argue that *Oaks v. Connors,* 339 Md. 24, 660 A.2d 423 (1995), favors their position. In *Connors,* the employee in question was required to drive between grocery stores as

---

**11.** In doing so, the court dismissed the plaintiff's argument that the fact the corporation provided a travel allowance indicated that the employer had consented to the employee's use of his automobile. *Id.* at 227. But the court did not, as defendants seem to argue, hold that compensation for driving time was irrelevant to the analysis; rather, the *Dhanraj* court focused on the "nature" of the travel allowance, which was provided pursuant to a union contract and was the same regardless of how the employee traveled to work. In particular, the travel allowance was provided if the employee's assigned job site was outside of his "base zone" and regardless of the method of transportation. *Id.* at 227 ("[The employee] was entitled to the same allowance had he traveled in his own car, or as a passenger in another's car, or hired a taxicab, or walked, or even if he stayed ... in a nearby hotel. He used his automobile by his own choice and for his personal convenience; he was under no instruction, direction or duty to use it.").

part of his job, just as Norris was required to drive between job sites. Still, the Maryland Court of Appeals found that vicarious liability for a car accident was improper. Yet the crucial difference between defendants' cases and the instant case is still present: the employee in *Connors* got into a car accident while driving from *his home to work*, whereas Norris was driving from one job site to another.

Finally, defendants' reliance on *Sheets v. Chepko*, 83 Md.App. 44, 573 A.2d 413, is similarly misplaced.[12] Again, the key distinction between *Chepko* and the instant case is that the *Chepko* plaintiff, a "floating custodian" who would substitute at whatever school needed his services on a particular day, "was never required to report to more than one school on any given day." *Id.* at 416. Thus, any driving by the employee in *Chepko* was, by definition, "to or from" work, and wholly ancillary to his duties as a custodian. Norris, on the other hand, was regularly expected to drive, in his own vehicle, from one site to another while on the job.

Worth particular attention here is the case of *L.M.T. Steel Products, Inc. v. Peirson*, 47 Md.App. 633, 425 A.2d 242, 246 (1981), in which the Maryland Court of Special Appeals affirmed a jury verdict holding an employer liable under a similar set of facts. In *Peirson*, the employee was driving "from the [employer's] jobsite to a diner to use a public telephone" in order to call his employer's office. *Id.* While the

employee was driving in his own car, he got into an accident with the plaintiff. *Id.* The Court of Special Appeals found that these facts "clearly suffice[d] to show that [the employee] was in the course and scope of his employment ... when driving to the diner." *Id.* Like Norris, the employee was driving while at work, and for a business purpose. In fact, the instant situation presents an even stronger case for vicarious liability, as the facts indicate that Barrett and Mass Electric likely consented to Norris' use of his own vehicle and may have had a right of control over that vehicle. *See infra.*

Ultimately, the facts relevant to this motion are straightforward, and more than sufficient to raise genuine issues of material fact with respect to both the consent and the control parts of the vicarious liability test. While at work, Norris was instructed by his supervisor to move to a different job site. (Dep. of W. Norris at 15–16.) As was his employer's policy, he used his own car to transport himself.[13] *(See id.* at 44 ("Q: And I presume you don't need to use a vehicle to perform this job? A: Yeah, *you do* because we were not allowed to travel on the Mass Electric vehicles, *so everybody had to have their own vehicle. So that was mandated.*") (emphasis added).) While not compensated specifically for his travel expenses, he was being paid by his employer during the time of accident,[14] reflecting the fact that

---

12. *Henkelmann*, 26 A.2d 418, is inapposite because the employer in that case did not authorize the employee to use his vehicle or have any control over it. The evidence presented here is sufficient to raise genuine issues of material fact with respect to both consent and control. *See infra.*

13. The conclusion that it was the employer's policy that Norris should use his own vehicle is bolstered by the fact that the employer was contractually obligated to provide Norris with

car insurance. *(See* Dep. of J. Gallo at 28–29; Pls.' Opp'n to Def. Barrett's Mot. for Summ. J. Ex. G at 2 ("Per the terms of the subcontract ... Barrett provided auto liability insurance ... including this defendant ...").)

14. On the day in question, Norris was paid from 7:00a.m. to 1:00p.m., and the accident occurred slightly before 1:00p.m. (Def. Barrett's Mem. in Supp. of Mot. for Summ. J., Ex. 5.)

he was working the entirety of the relevant period.[15]

Barrett's own memorandum shows why the motions must be denied. For example, Barrett concludes that "[n]o part of [Norris'] job ... required him to drive on the job." (Def. Barrett's Mem. in Supp. of Mot. for Summ. J. at 13.) Yet in the preceding sentence, Barrett unequivocally admits that Norris "was responsible for not only transporting himself, in his own vehicle, to whatever job site Mass [Electric] selected each morning, but also to any other job sites to which Mass [Electric] directed him to during the course of the day." (*Id.*) Clearly, if the job made Norris responsible for transporting himself in his own vehicle from one job site to the next, the job *did* require him to drive.[16]

In the final analysis, the cases relied upon by Barrett and Mass Electric do not address the question faced here: Is vicarious liability appropriate when an employee gets into a car accident while on the job, driving from one job site to another, at the employer's instruction? In light of the evidence presented, a jury could surely answer that question in the affirmative. *See Henderson,* 552 A.2d at 940 (implying that if an employee is on the job and being compensated during the period he is driving, vicarious liability can be imposed) (citing *Regal Laundry Co. v. Abell Co.,* 163 Md. 525, 163 A. 845 (1933) and *Peirson,* 47 Md.App. 633, 425 A.2d 242); *see also* 8 Am.Jur.2d Automobiles § 701 ("Where the employment requires the employee to travel regularly from job to job in the course of his or her work, it is more likely that the employee will be deemed to be acting in the course of employment in so traveling in his or her own motor vehicle, at least where the employer failed to provide other transportation and consented to the use of the employee's vehicle.").

Defendants Barrett and Mass Electric may well dispute the strength and validity of the evidence presented, but the resolution of such disputes is clearly a job for trial, not summary judgment. While Mass Electric declares that "[n]either Barrett or Mass Electric 'mandated' or 'required' that Mr. Norris have his own vehicle," (Def. Mass Electric's Reply to Pls.' Opp'n to Mot. for Summ. J. at 3), the evidence is sufficient to support a finding to the contrary. *(See, e.g.,* Dep. of W. Norris at 44 ("... *[E]verybody had to have their own vehicle. So that was mandated.*") (emphasis added); Pls.' Opp'n to Def. Barrett's Mot. for Summ. J., Ex. G at 2 ("Per the terms of the subcontract ... Barrett provided auto liability insurance ... including this defendant ...").) This evidence could easily support a finding that Barrett and Mass Electric consented to Norris' use of his own vehicle in the performance of his duties, and that they had a right to control that vehicle.

## CONCLUSION

For the reasons outlined above, plaintiffs' motion for partial summary judgment is granted, and Barrett and Mass Electric's motions for summary judgment are denied.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 21st day of February, 2008

ORDERED

---

**15.** Norris may have stopped for lunch or eaten lunch in his automobile.

**16.** The fact that Norris had to transport himself in his own vehicle, as part of the job, is also supported by the record. *(See* Manchester Aff. ¶ 3; Dep. of W. Norris at 44.)

1. Plaintiffs' motion for partial summary judgment is granted; and

2. Defendants' motions for summary judgment are denied.